IMPULSE PACKAGING, INC.

v.

Laureana S. SICAJAN.

No. 2003–79–M.P.

Supreme Court of Rhode Island.

March 31, 2005.

George E. Furtado, Esq., Providence, for Plaintiff.

Robert Smith Thurston, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

FLAHERTY, Justice.

In this Workers' Compensation case, we are called upon to determine whether the Appellate Division of the Workers' Compensation Court properly dismissed the petitioner's appeal when it found that her reasons of appeal lacked the specificity required by statute and the court's rules of practice and procedure. The petitioner, Laureana S. Sicajan, argues that her appeal to the Appellate Division was in keeping with the norm for such appeals and that her memorandum in support of reasons of appeal should be considered amendatory to her reasons of appeal, especially in light of the fact that the two documents were stapled together. Finally, she argues that the Appellate Division's refusal to allow her to amend her reasons of appeal was an unduly harsh and drastic result that deprived her of due process of law. On November 20, 2003, this Court granted Sicajan's petition for certiorari [1] to review the Appellate Division's denial and dismissal of her appeal for failure to file reasons of appeal that comply with the specificity requirements of G.L.1956 § 28–35–28(a).[2] For the reasons set forth herein, we quash the final decree of the Appellate Division and hold that although the

---

1. A party may seek review by the Supreme Court pursuant to G.L.1956 § 28–35–30. The statute provides, in pertinent part:

    "(a) Upon petition for certiorari, the supreme court may affirm, set aside, or modify any decree of the appellate [division] of the workers' compensation court only upon the following grounds:

    (1) That the workers' compensation court acted without or in excess of its authority;

    (2) That the order, decree, or award was procured by fraud; or

    (3) That the appellate division erred on questions of law or equity, the petitioner first having had his objections noted to any adverse rulings made during the progress of the hearing at the time the rulings were made, if made in open hearing and not otherwise of record.

    "(b) Review shall not be granted by the supreme court except as provided in this section, and the supreme court shall disregard any irregularity or error of the appellate division or trial judge unless it affirmatively appears that the petitioner was damaged by the irregularity or error."

2. Section 28–35–28(a) provides in pertinent part:

    "Any person aggrieved by the entry of a decree by a judge may appeal to the appellate division established pursuant to this section by filing with the administrator of the court within five (5) days of the date of the entry of a decree, exclusive of Saturdays, Sundays, and holidays, a claim of appeal and, subject to the rules of the court, by filing a written request for a transcript of the testimony and ruling or any part thereof desired. Within any time that a judge shall fix, either by an original fixing or otherwise, *the appellant shall file with the administrator of the court reasons of appeal stating specifically all matters determined adversely to him or her which he or she desires to appeal,* together with so much of the transcript of testimony and rulings as he or she deems pertinent, and within ten (10) days after that the parties may file with the administrator of the court those briefs and memoranda that they may desire concerning the appeal." (Emphasis added.)

court was well within its discretion to reject petitioner's reasons of appeal, justice requires a result less draconian than summary dismissal.

## Facts and Procedural History

In November 1997, while performing her duties as a machine operator for her employer, Impulse Packaging, Sicajan injured her left hand when the "boxing" machine with which she was working misfired, resulting in the partial amputation of her ring and long fingers.[3] Surgery was performed in September 1998, and after she continued to complain of problems with the injured digits, Sicajan sought a second opinion from a different physician, who discussed additional surgery as a means of alleviating her discomfort. Sicajan returned to Impulse in early November 2000, when she began working at a suitable alternative employment (SAE) position as an assembler.[4] At trial, Sicajan testified that she was able to do this job because assembly work did not aggravate her hand injuries. Unfortunately, in De-

cember of that year, Sicajan was injured in a non-work-related automobile accident and again left her position at Impulse because of the resulting injuries.[5] In May 2001, despite receiving authorization from her chiropractor that she could safely return to work, Sicajan was told that there no longer was any position available for her at Impulse Packaging.

Before addressing the journey the parties took through the Workers' Compensation Court, and the petition for certiorari, it is important to note the initial process in which the parties engaged as they addressed Sicajan's rights under the workers' compensation laws. Soon after Sicajan's injury, the parties entered into a memorandum of agreement dated December 18, 1997, pursuant to § 28–35–1, which established the injury as a left third and fourth digit distal flanks amputation, placed Sicajan on partial incapacity, and established an average weekly wage of $240.02. For various periods of time she received benefits for either total or partial incapacity.[6] At present, Sicajan receives

---

3. At the time of her injury, Sicajan had worked for Impulse Packaging for approximately six years. She testified that she worked forty hours a week, and made between three thousand and five thousand boxes a day.

4. General Laws 1956 § 28–33–18.2(a), the suitable alternative employment statute, states in pertinent part that:

"When an employee has sustained an injury which entitles the employee to receive benefits * * * the employee may become capable of suitable alternative employment as determined by the workers' compensation court, or may be offered suitable alternative employment as agreed to by the employee and employer with written notice to the director. The employer or insurer shall pay an injured employee that accepts suitable alternative employment a weekly compensation equal to sixty-six and two-thirds percent (66 2/3%) of the difference between the employee's average weekly wage, earnings or salary before the injury and his or

her weekly wages, earnings or salary from the suitable alternative employment."

5. Sicajan also testified that she did not injure her hands in the auto accident.

6. The trial justice provided the following history of Sicajan's incapacity benefit entitlements:

"The memorandum of agreement established an average weekly wage of Two Hundred Forty and 02/100 ($240.02) Dollars and placed the employee on partial incapacity as of November 26, 1997. A pretrial order in W.C. No. 98–2364 discontinued the employee's benefits as of May 20, 1998. A consent decree entered in W.C.C. No. 98–2364 found that the employee sustained a return of partial incapacity on June 26, 1988 through August 31, 1998. It further found that the employee was totally incapacitated from September 1, 1998 through September 27, 1998, and then partially incapacitated from September 28, 1998 and

nothing in the form of benefits for incapacity, although she was awarded benefits for disfigurement and loss.

Eventually, both parties sought further judicial intervention. Impulse Packaging filed a petition[7] with the Workers' Compensation Court, alleging that Sicajan's incapacity for work had ceased, seeking to suspend her benefits for refusing suitable alternative employment, and requesting that the court set an earning capacity based upon Sicajan's alleged refusal and later termination of an SAE position,[8] pursuant to G.L.1956 § 28–33–18.2(c).[9] While this petition was pending, Sicajan filed her own petition[10] with the Workers' Compensation Court requesting an order that Impulse pay for additional hand surgery. As the Appellate Division concisely put it, "the employee filed an Employee's Petition to Review, W.C.C. No. 00–7268, alleging that the employer refuses to give written permission for surgery, disarticulation and excision of neuromas to the left middle finger and the left ring finger, as recommended by Dr. Hubbard. The petition was denied at a pretrial conference on February 28, 2001, and the employee claimed a trial."

The Workers' Compensation Court consolidated the matters for trial and found for Impulse Packaging on both petitions. After reviewing the medical evidence and affidavits of four different doctors, the trial court found that Sicajan had not met her burden of producing credible evidence of a probative force to support her petition to review seeking further hand surgery. The trial court found the evidence weighed in favor of finding that Sicajan was no longer disabled as to her job, and that further surgery was not necessary to cure, relieve, or rehabilitate her from the effects of her injury. With respect to Impulse Packaging's petition for review, the court also ruled against Sicajan, finding that Impulse had met its burden of proof as to its allegation that Sicajan no longer was disabled as a result of her November 1997 injury. Because the trial court determined that Sicajan could return to full and unrestricted work, it discontinued her benefits, which eliminated the need to address

continuing. A pretrial order in W.C.C. No. 99–1280 paid the employee benefits for disfigurement and loss of use. A pretrial order in W.C.C. No. 99–5891 established that the employee reached maximum medical improvement. A pretrial order entered in W.C.C. No. 00–0737 modified the employee's benefits to seventy percent (70%) as of September 2, 2000."

7. Employer's petition to review, W.C.C. No. 00–5447.

8. Impulse contends that Sicajan voluntarily terminated an SAE position when she left work for four months after being injured in an automobile accident.

9. Section 28–33–18.2(c), the suitable alternative employment statute, states in pertinent part that:

"If suitable alternative employment as determined by the workers' compensation court has been offered to the employee and the employee has refused to accept the employment, then the workers' compensation court shall, in fixing the amount of compensation payable subsequent to the refusal, treat earnings capacity as post injury earnings, requiring the employer or insurer to pay the injured employee a weekly compensation equal to sixty-six and two-thirds percent (66 2/3%) of the difference between the employee's average weekly wage, earnings, or salary before the injury and the weekly earning capacity. In no case shall increases in payments made to an injured employee pursuant to § 28–33–18.3(b)(1) or 28–33–17(f) be considered in the calculation of the weekly compensation due pursuant to this section. The fact that the employee is undergoing rehabilitation does not by itself exempt the employee from the provisions of this subsection."

10. Employee's Petition to Review, W.C.C. No. 00–7268.

Impulse's request to establish earnings capacity. The court further declined to address Impulse's allegations that Sicajan had voluntarily left her SAE position.

Sicajan appealed both of these adverse decisions. Sicajan's reasons of appeal consisted of the following:

"1. The Decree is against the Law.

"2. The Decree is against the evidence.

"3. The Decree is against the law and the evidence and the weight thereof.

"4. The Trial Judge was clearly erroneous when she found the employee was no longer disabled in whole or in part.

"5. The Trial Judge was clearly erroneous to find the employee had [n]ot proved the proposed surgery was necessary to cure, relieve, or rehabilitate her from the effects of her work related injury.

"6. The employee did not leave suitable alternative employment."

In addition to her reasons of appeal, Sicajan filed an eight-page "Memo in Support of Reasons of Appeal." [11] Impulse responded by filing a motion to dismiss both appeals, citing Sicajan's lack of specificity in her reasons of appeal, and arguing that § 28–35–28(a) requires that an appellant file reasons of appeal "stating specifically all matters determined adversely to him or her which he or she desires to appeal." After ordering petitioner to show cause why her appeals should not summarily be decided, the Appellate Division found that cause had not been shown and ruled in Impulse's favor. It *found that Sicajan's* reasons of appeal, despite the accompanying memorandum, did not satisfy the requirements of § 28–35–28. The court denied and dismissed petitioner's appeals, finding that her memorandum "cannot be

considered an addendum to the reasons of appeal in order to satisfy the requirements of the statute and the case law." We issued a writ of certiorari, and it now falls to this Court to determine whether the Appellate Division acted properly when it denied and dismissed petitioner's appeal.

### Standard of Review

■ "It is well settled that [this Court's] review of a decree of the Appellate Division is limited to a determination of whether that tribunal erred in deciding questions of law." *Wehr, Inc. v. Truex,* 700 A.2d 1085, 1087 (R.I.1997) (citing § 28–35–30). "If legally competent evidence exists in support of the factual findings of the Appellate Division, those findings are binding upon this [C]ourt, and the decree of the Appellate Division must be sustained." *Wehr, Inc.,* 700 A.2d at 1087–88. This Court will, however, conduct a *de novo* review if a question of law or a mixed question of fact and law is in issue. *See Lambert v. Stanley Bostitch, Inc.,* 723 A.2d 777, 780 (R.I.1999).

### Analysis
#### I
#### Sufficiency of the Appeal

■ The petitioner raises several arguments to support her position. Sicajan contends that the statements contained in her supporting memorandum satisfied the specificity requirement of § 28–35–28. Further, Sicajan contends that her procedural due process rights were violated when the Appellate Division failed to consider her memorandum, and finally, that the Appellate Division erred when it summarily dismissed her appeal without giving her the opportunity to amend or conform

---

**11.** It should be noted that Sicajan's supporting memo was stapled to her reasons of appeal.

her reasons of appeal. Addressing petitioner's first issue, though relating to all of her contentions, "[i]nitially, we note that the appellate commission generally may not consider an issue unless that issue is properly raised on appeal by the party seeking review. * * * The degree of particularity required of an appealing party in a Workers' Compensation Commission case, as set forth in * * * § 28–35–28 is that each issue a party wishes the commission to consider must be specifically set forth." *State v. Hurley*, 490 A.2d 979, 981 (R.I.1985).

■ It has been established by this Court that the Appellate Division may properly deny and dismiss an appeal for failure to comply with the specificity requirements. *See Falvey v. Women and Infants Hospital*, 584 A.2d 417 (R.I.1991); *Bissonnette v. Federal Dairy Co.*, 472 A.2d 1223 (R.I.1984). In *Bissonnette*, we affirmed the Appellate Division's dismissal of an appeal in which

> "the employee's reasons of appeal were nothing more than general recitations that the decree was against the law and the evidence and that the trial commissioner placed an untenable burden on the employee. The commission, therefore, properly concluded that the reasons of appeal filed by the employee were without merit." *Bissonnette*, 472 A.2d at 1226.

Likewise, in *Falvey*, we relied on our reasoning in *Bissonnette* to affirm a dismissal based on reasons of appeal alone which were confusing, poorly drafted, and "prevented the Appellate Commission from comprehending in what manner or where in the record the trial commissioner allegedly erred." *Falvey*, 584 A.2d at 419. They were "general recitations of error

supported by confusing, nonspecific allegations * * *." *Id.* at 420. Comparing the situations in *Falvey* and *Bissonnette* to Sicajan's own reasons of appeal, it is clear that based on her reasons of appeal alone, Sicajan failed to meet the specificity requirements of § 28–35–28.

■ Despite her insufficient reasons of appeal, Sicajan argues that the supporting memorandum she submitted along with her reasons of appeal fulfills the specificity requirement. We disagree. To begin, we refer to the texts of both the statute and the Workers' Compensation Rules of Practice. The pertinent part of § 28–35–28 requires that the appellant shall file "reasons of appeal stating specifically all matters determined adversely to him or her which he or she desires to appeal" and provides that within ten days of filing those reasons of appeal, the parties "*may* file with the administrator of the court those briefs and memoranda that they may desire concerning the appeal." (Emphasis added.) The relevant rule of practice, Rule 4.5 of the Workers' Compensation Court Rules of Practice, provides that "[w]ithin ten (10) days of the filing of the reasons of appeal with the Office of the Administrator of the Court, the appellant or other moving party shall file a statement of the case and a brief summary of the issues proposed to be argued on appeal; this document shall be concise, not exceeding two (2) pages * * *."[12]

■ We do not read the statute and the rule as conflicting with each other. Rather, we "endeavor to harmonize statutes and rules that address the same subject matter when we are asked to interpret them. Thus, we should attempt to construe both the statute and the rule in a

---

**12.** Rule 4.5 of the Workers' Compensation Court Rules of Practice has since been amended. (Feb. 23, 2004).

manner that avoids a conflict between the scope of their respective authorizations." *State v. Dearmas*, 841 A.2d 659, 666 (R.I. 2004). Thus, we read Rule 4.5 as necessarily including the statutory specificity requirement, and building upon it with the altogether different, additional step of requiring a brief statement of the case and summary of the issues. Reading the statute and the rule in tandem, we interpret these mandatory guidelines as requiring first a submission of specific reasons of appeal, followed by a brief statement of the case/summary of the issues, with the option of submitting separate and distinct briefs or legal memoranda.

■　　The petitioner submitted to the Appellate Division both her reasons of appeal and an eight-page document titled "Memo In Support of Reasons of Appeal," without specifying whether the memo was to be considered the mandatory statement of the case/brief summary of the issues, an optional memorandum, both, or neither.[13] The petitioner claims, however, that because she "substantially complied" with the law by providing *a* memo, the Appellate Division should have permitted review.[14] The petitioner further argues that

her error was a mere technicality that should not have caused the court to reject her appeal, and asserts that if she had simply titled the memo differently, it would have been accepted by the court. However, this argument doesn't pass muster. "All rules of appellate procedure may be characterized as having technical aspects." *Munro v. Kaiser Aluminum & Chemical Corp.*, 423 A.2d 832, 833 (R.I. 1980). This does not mean that such "technical aspects" may be disregarded, nor does it minimize the importance of such requirements.

It appears to us that petitioner considered the statutory and rule-based requirements to be mere guidelines, and that she submitted documents in which she attempted to generally reargue her position to the Appellate Division without adhering to the rules. This is not a mere "technical" mistake, and it should not be the burden of the Appellate Division to comb through accompanying documents in order to cull the specific arguments in support of the denominated reasons of appeal. Indeed, the accompanying memo may provide the Appellate Division with a better understanding of petitioner's position, but it does not highlight in a brief or concise

---

**13.** It should be noted that the eight-page memo far exceeds the two-page limit established in Rule 4.5 for the statement of the case/brief summary of the issues.

**14.** We also take this opportunity to address Sicajan's argument that her memo should have been accepted as a part of her reasons of appeal because "the [A]ppellate [D]ivision typically considers an appellant's supporting legal memorandum in conjunction with the reasons of appeal when determining the basis of an appeal." She relies on two decisions of the Appellate Division and in doing so erroneously assigns both weight and significance to them where there is none to be found. Firstly, lower court decisions are neither binding on this Court, nor do they establish precedent. Secondly, petitioner misconstrues both cases. Contrary to petitioner's claims, *Ortiz v. Tytex,*

*Inc.,* W.C.C. No. 00–65 (App. Div. June 21, 2001), *does not stand for the proposition that* "the [A]ppellate [D]ivision turned to the employee's supporting memorandum for guidance when it could not determine the scope and meaning of the reasons from their face." The petitioner similarly twists the relationship between reasons of appeal and supporting memorandum in the case of *Rae-Mil Dred Newsome v. State of Rhode Island/General Hospital,* W.C.C. No. 94–6262 (App. Div. Nov. 1998–Oct.1999 term). In that Appellate Division decision, the court merely states that it "carefully considered the employer's reasons of appeal together with its legal memoranda and oral arguments." This does not stand for the proposition that the memoranda serves as a legitimate substitute for specificity in one's reasons of appeal.

manner the specific points of error that the reasons of appeal are intended to set forth. In fact, we previously have held that "[t]he Appellate Commission's recognition of the general result desired by petitioner does not relieve her of the burden of specifying in what manner or where in the record the trial commissioner allegedly erred." *Falvey*, 584 A.2d at 419.

The petitioner further posits that the denial and dismissal of her appeal violate her procedural due process rights. However, Sicajan had the opportunity to appeal the Workers' Compensation Court decree and she did so without complying with the clearly articulated laws and rules governing appeals to the Appellate Division of the Workers' Compensation Court. In sum, after reviewing the Appellate Division's determination that Sicajan's reasons of appeal failed to meet the necessary specificity requirement, we agree that she did not comply, and as such, the Appellate Division acted within its discretion to refuse to act upon her appeal in the form presented to it.

## II

### Dismissal of the Appeal

Although we have concluded that petitioner failed to adhere to the specific requirements of the Workers' Compensation rules and related statutory provisions, we are vexed by what we believe to be an unjust result in the summary dismissal of petitioner's appeal. We agree, based on our caselaw and our analysis of petitioner's reasons of appeal, that the Appellate Division was not required to hear Sicajan's appeal in the form that it was presented. We do not agree, however, that summary dismissal was warranted under the circumstances presented in this case.

In both the *Falvey* and *Bissonnette* cases, this Court affirmed the decision of the Appellate Division of the Workers' Compensation Court to deny and dismiss an appeal for the failure to meet required levels of specificity. However, shedding no negative light on those cases, and without detracting from those holdings, we believe that the instant case is distinguishable from *Falvey* and *Bissonnette* to the extent that summary dismissal here was draconian in nature. There is no question that Sicajan's reasons of appeal alone were insufficient. Likewise, there is no question that she failed to follow the rules in submitting both inadequate reasons of appeal and a memorandum of excessive length and questionable identity. However, Sicajan's appeal may be distinguished from those in *Falvey* and *Bissonnette* precisely because she did submit a memorandum that fleshed out and provided specific arguments to support her reasons of appeal. That fact cannot be ignored, and a review of *Falvey* and *Bissonnette* fails to reveal that such additional information was provided along with bare bones reasons of appeal that the Appellate Division rejected in those cases. The petitioner in this case submitted reasons of appeal, albeit insufficient in and of themselves, stapled together with a lengthy and detailed memorandum. In our opinion, the Appellate Division, although correct in faulting the procedural shortcomings of the appeal, should have allowed Sicajan the opportunity to conform her submissions to reflect the statutory and rule-based requirements. Summary dismissal in this case was hasty, and in the interest of justice, should have been avoided. For this reason, we remand the case to the Appellate Division for petitioner to have the opportunity to submit a revised appeal.

## III

### Attorney's Fees

Section 28–35–32 provides for costs and counsel fees to an employee

who successfully prosecutes or defends a petition against his or her employer.[15] However, we set this case apart from the general rule because we specifically have determined that Sicajan's reasons of appeal were deficient and violated the statutory and rule-based requirements. Although we have remanded the case to the Appellate Division in petitioner's favor, we hereby deny Sicajan the benefit of counsel fees and direct that each party be responsible for its own costs and counsel fees in connection with this petition for certiorari.

## Conclusion

For the foregoing reasons, we quash the final decree of the Appellate Division of the Workers' Compensation Court and remand for further proceedings consistent with this opinion.

15. Section 28–35–32 provides in pertinent part:

"In proceedings under this chapter * * * costs shall be awarded, including counsel fees and fees for medical and other expert witnesses including interpreters, to employees who successfully prosecute petitions for compensation, petitions for medical expenses, petitions to amend a preliminary order or memorandum of agreement, and all other employee petitions, * * * and to employees who successfully defend, in whole or in part, proceedings seeking to reduce or terminate any and all workers' compensation benefits * * *."