DECISION
Appellant John Bergantini ("Appellant" or "Bergantini") brings this appeal from a decision of the Rhode Island Department of Business Regulation ("DBR"). The DBR revoked Bergantini's real estate appraiser license after finding that Bergantini's appraisals were dishonest, fell below minimum standards of diligence, and failed to conform with the Uniform Standards of Professional Appraisal Practice ("USPAP"). This Court has jurisdiction of Appellant's timely appeal pursuant to G.L. 1956 § 42-35-15.
 I Facts and Travel
The DBR issued John Bergantini a real estate appraiser license in 1992. (Ex. 1, DBR Notice of Intent to Revoke License, Dec. 14, 1999.) On December 14, 1999, the DBR notified Bergantini of its intention to revoke his real estate appraiser license. Id. The DBR believed that Bergantini's appraisals between the time period of May 2, 1997 and June 16, 1998 displayed a pattern of suspicious activity amounting to what it believed to be "real estate flips." (March 28, 2005, DBR Decision ("Decision") at 6, 10.) *Page 2 
The DBR described a "real estate flip" as a "prearranged transaction in which real property was purchased . . . by a buyer at a relatively low price and was to be quickly resold to another at a significantly higher price." (Ex. 1, DBR Notice of Intent to Revoke License ¶ 4, Dec. 14, 1999.) The DBR explained that a "real estate flip is fraudulent if, among other circumstances, (i) the higher price on the resale did not fairly represent the market value of the property if sold in an arms-length transaction, but was an artificially high price, supported by an inflated and false appraisal; and (ii) the higher, fraudulent resale price was used to obtain a mortgage loan, the proceeds of which were spent toward the initial purchase of the property by the `flipper' and for other purposes." Id. The DBR noted that a "real estate flip" is not a statutory defined violation but rather a characterization of "an unusual pattern of appraisal and subsequent closely timed sales at vastly different prices." (Decision at 16.) The DBR believed Bergantini violated G.L. 1956 § 5-20.7-19 and § 5-20.7-20 when conducting the appraisals for the allegedly flipped properties because the appraisals did not conform with the USPAP, the appraisals suggested dishonesty with an intent to injure or benefit himself or another, and the appraisals fell below minimum standards of reasonable diligence.See § 5-20.7-19, and § 5-20.7-20 (5) and (6).
After numerous pre-hearing proceedings, continuances, and scheduling conflicts, the DBR held hearings to address the allegations on February 26; February 28; September 17; and September 19; of 2002. The DBR produced thirty exhibits over the course of the hearings, and the Appellant also introduced an additional sixteen exhibits into the record. The hearings consisted primarily of the testimony of three qualified experts — Peter M. Scotti (Scotti), Judy Jones (Jones), and J. Nathan Godfrey (Godfrey) — *Page 3 
each of whom was a Rhode Island licensed appraiser and member of the Real Estate Appraisal Board. Additionally, Bergantini testified in his own defense.[1]
Scotti testified that he noted many improper practices in his review of Bergantini's appraisals. (Decision at 6.) Specifically, Scotti highlighted the appraisal of the property at 23 West Street, Pawtucket, Rhode Island ("23 West Street").[2] Scotti noted that the appraisal reported a market value significantly higher than the initial sales price. Id. Scotti observed that the property had been on the market for 330 days at a price of $86,000, but that Bergantini appraised the property at $154,000. He then noted that the property sold for $86,000, but was resold on the very same day for $150,000. Scotti testified that this pattern is consistent with the improper practice of real estate flipping because when flipping occurs, the service of a real estate appraiser is required to appraise the property at an inflated value in order to obtain financing. Id.
The testimony of Godfrey supported Scotti's view that the appraisals of Bergantini were consistent with the evidence of improper flips. Godfrey researched the public records and found seven appraisals consistent with the pattern of a high appraisal followed by two sales: one at a relatively low price and then one corresponding with the *Page 4 
high appraisal value. (Ex. 50 and Ex. 51.) Interestingly, Godfrey had conducted an appraisal of 23 West Street only three weeks prior to Bergantini's appraisal of the same property, but with markedly different results.
Godfrey appraised the property at $50,000. (Ex. 44 at 4.) In reviewing Bergantini's appraisal of the same property, Godfrey identified many problems. He concluded that Bergantini's appraisal violated the USPAP, did not display reasonable diligence, and grossly misrepresented the property's market value. (Ex. 48.) Indeed, Godfrey was highly critical of Bergantini's appraisal, finding that "the appraiser is guilty of gross misrepresentation of this property and its market value" and that "[t]he appearance clearly exists that the appraiser is reporting an opinion of value that is not supported by the market data." Id. at 3.
Among the many problems Godfrey noted, he emphasized that Bergantini "developed his analysis subject to converting the property from seven units to four units," and that "[t]here is no reasoning or support for the basis of the appraisal being as a four unit residential dwelling." Id. at 3, 5. He cited the appraisal for failing to "prominently identify the special assumptions made relative to converting the property to a four-unit residential dwelling. The appraiser fails to address the costs and expenses associated with the conversion to a four-unit dwelling."Id. at 7. Further, Godfrey noted that the "[a]ppraiser states that a listing range of $139,900 to $159,000 would be realistic at this time despite the fact the property has been actively marketed at $99,925 and $65,000 for almost eleven months."Id. at 6.
Additionally, Godfrey testified as to other appraisals conducted by Bergantini. He, like Jones, expressed concerns over properties Bergantini deemed comparable to *Page 5 
those he appraised.[3] Both believed the comparable properties were inappropriate based on their general knowledge of the houses and the areas, and not on a detailed analysis of each individual property. Godfrey ultimately determined that other properties Bergantini had appraised were improperly flipped and noted that it is not common for properties to transfer on the same date with two inconsistent sale prices. (Decision at 8.)
In response to the experts' testimony and evidence against him, Bergantini admitted into the record exhibits attempting to bolster his appraisal values. Bergantini pointed to more recent sales of the allegedly improperly flipped houses and testified that those values were more in line with his appraisal values. Bergantini further suggested that tax assessments on the disputed appraisal properties supported the conclusions from his appraisals. Additionally, Bergantini elicited testimony from the witnesses attempting to undermine the credibility of their assertions. He stressed that the witnesses had not personally appraised the subject properties and argued therefore that they did not have a thorough basis to gauge the market value of the properties or the properties used as comparables.
The DBR Hearing Officer, based on an extensive review of the exhibits, the testimony of the experts, and the arguments of Appellant, issued a recommendation to the DBR Director that the DBR revoke Appellant's real estate appraiser license for violation of § 5.20.7-20. (Decision at 21.) The Hearing Officer analyzed each of the nine appraisals admitted into evidence and noted the exhibits produced in regard to each of the properties.Id. at 10-13. The Hearing Officer produced his recommendation in a twenty-one *Page 6 
page decision, making findings of fact, discussing the relevant statutory provisions, and making a conclusion based on his analysis of the facts and the law.[4] *Page 7 
The Hearing Officer first observed that six of the nine appraisals were followed by the property being sold twice on the same day.[5]
For each of these properties, the Hearing Officer found that the first sale was for significantly less value than the appraisal, but the second sale on that same day was at or near the appraised value. The Hearing Officer believed the sale and then subsequent resale could not have occurred without Bergantini's supporting appraisal. The Hearing Officer observed that Appellant "offered no rational explanation of how this could have occurred." (Decision at 13.) The Hearing Officer believed the degree of variance in the sales prices was evidence of dishonest intent and that others were injured as a result because several of the properties subsequently foreclosed, noting that "something more was going on and Respondent was an integral part of that activity. (Decision at 16.)
Supporting his conclusion that Bergantini misrepresented his appraisals, the Hearing Officer observed that several of the appraisals misidentified the current property owner. The Hearing Officer found this trend "[e]qually disturbing." He questioned why *Page 8 
certain appraisals listed the "current owner" not as the person who actually owned the property at the time of the appraisal, but rather as the person who purchased the property at a "bargain basement" price and then sold it to the person for whom Bergantini appraised the property. (Decision at 14.) The Hearing Officer identified misleading ownership identifications for the properties appraised at 41 Woodbine Street, Providence; 233 Federal Street, Providence; and 18-20 Pamona Avenue, Providence. Each of those three properties demonstrated the qualities which Scotti testified as consistent with an improper flip.[6]
Even for the three properties that did not share the same day sale pattern, the Hearing Officer observed evidence suggesting improper behavior. (Decision at 14.) *Page 9 
Specifically, he cited the property at 54-56 Canton Street, which Appellant appraised for $103,000. The Hearing Officer noted that just eleven days prior to the appraisal the very property was sold for $57,500. The property was sold again slightly over a year later for $89,000 and ultimately lost at a tax sale. When the property was finally sold on October 16, 2001, the sale was for $50,000. Similar to the alleged flips, the Hearing Officer observed that Bergantini offered "no reasonable explanation" as to why the appraisal value differed so greatly from the sale figures.Id.
The Hearing Officer acknowledged Bergantini's argument that the discrepancies and flaws suggested in his appraisals amounted to merely differences of opinion between his appraisals and the experts' opinions. Indeed, the Hearing Officer noted that the work of a real estate appraiser is not an exact science because of the element of judgment inherent in any appraisal. Nonetheless, the Hearing Officer found that the mistakes went beyond differences of opinion and violated § 5-20.7-20 (2), (5), and (6).
Moreover, the Hearing Officer specifically referenced further evidence supporting his finding that Bergantini violated § 5-20.7-20. First, the Hearing Officer highlighted how one of Bergantini's appraisals "failed to explain a signed purchase and sale agreement for an amount significantly different than his appraised value of the property." Id. at 15. The Hearing Officer then noted that two appraisal values were derived at based on contemplated conversions to the property and that Bergantini had not figured in the cost of the conversion in his appraisal. Finally, the Hearing Officer noted the general lack of transparency in the appraisals in terms of accounting for previous transactions on the properties. He cited to the testimony of Godfrey, who emphasized that the job of an appraiser is to fully and prominently explain anything unusual in a property that would *Page 10 
suggest why a previous sale on the property is not indicative of the current value of the appraisal. The Hearing Officer noted that Bergantini consistently failed to do so. Id. at 16.
The Hearing Officer also addressed Bergantini's claim that subsequent tax assessments and sales on his appraised properties vindicated some of his appraisal figures.Id. at 17. The Hearing Officer acknowledged that the tax assessment figures were more in line with Bergantini's appraisal figures, but was hesitant in placing too much weight on the tax assessments. First, the Hearing Officer observed that tax assessment figures may not accurately reflect market conditions at prior times. He then noted that Bergantini did not present information as to when the tax assessments were conducted. Finally, he referenced the testimony of Godfrey, who stated that at the time of the appraisals in question, the market contained an excess of multi-family properties which were adversely affecting the value of such properties. Id. The Hearing Officer was equally cautious in placing too much weight on the subsequent sales of the appraised properties — sales which took place in 2001 and 2002. He noted that Bergantini had not produced evidence as to the market conditions during that time and again highlighted the testimony of Godfrey, which explained that market conditions were poor when Bergantini conducted the improper appraisals.
The Hearing Officer gave the Director of the DBR his recommendation that the DBR find that Bergantini violated § 5-20.7-20 (2), (5), and (6). The Hearing Officer believed that Bergantini's violations warranted revocation of his real estate appraiser license because of the "egregious" nature of the violations and the potential for "harm to the public." (Decision at 21.) The DBR Director adopted the Hearing Officer's decision *Page 11 
and recommendation and notified Bergantini of the DBR's decision on March 28, 2005. Appellant timely appealed the DBR decision to this Court pursuant to § 42-35-15.
On October 18, 2005, the parties filed a stipulation with this Court that Appellant had until November 18, 2005 to file his brief in support of his appeal. On November 18, 2005, Appellant filed his brief in support of his appeal. On March 13, 2006, the parties again filed a stipulation with this Court, this time extending the time until which the DBR had to file its reply brief to April 21, 2006. April 21, 2006 passed, however, and the DBR did not file a reply brief with this Court. Accordingly, on July 28, 2006, Appellant — due to the fact that the DBR had still failed to submit its reply brief — filed a motion to default, asking this Court to grant him a default judgment and reinstate his real estate appraiser license. On August 17, 2006, the DBR filed an objection to Appellant's motion to default, along with its brief in support of the DBR decision.
 II Standard of Review
The Rhode Island Administrative Procedure Act chapter 35 of title 42 governs this Court's review of an administrative appeal. Section 42-35-15(g) of the Act sets forth that:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and *Page 12 
substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Thus, "factual findings of the administrative agency are entitled to great deference." Champlin's Realty Assoc. v. Tikoian,989 A.2d 427, 437 (R.I. 2010). This Court's review is limited to ensuring that legally competent evidence supports the agency's decision. Nickerson v. Reitsma, 853 A.2d 1202, 1205 (2004). Legally competent evidence is indicated by the presence of some or any evidence supporting the agency's findings. EnvironmentalScientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1983). If such evidence exists, this Court is required to uphold the agency's conclusions. Id. This is so even if this Court might be inclined to view the evidence differently and draw different inferences than did the agency below. Barrington Sch. Comm. v. RILabor Relations Bd., 608 A.2d 1126, 1138 (R.I. 1992).
 III Law and Analysis A Motion to Default
Appellant asks this Court to grant his motion for default judgment against the DBR because of the DBR's failure to timely file a memorandum in opposition to Appellant's Brief in support of his appeal. Appellant does not, however, cite to any case law or statutory provision to support his request.[7] An entry of a default judgment is a *Page 13 
"drastic remedy that is not to be applied lightly." ProvidenceGas Co. v. Biltmore Hotel Operating Co.,119 R.I. 108, 112, 376 A.2d 334, 336 (R.I. 1977). Such a decision is left to the "judicial discretion" of the trial justice.Bloom v. Trudeau,107 R.I. 303, 304, 266 A.2d 417, 418 (R.I. 1970).
While this Court does not condone the DBR's failure to timely provide a reply memorandum, the delay does not warrant a default judgment. See Impulse Packaging, Inc. v. Sicajan,869 A.2d 593, 601 (R.I. 2005) (refusing to dismiss appeal for failing to meet technical requirements). Preliminarily, the Appellant does not propose, nor can this Court find, any authority suggesting that the memorandum is a condition precedent to this Court's jurisdiction. Indeed, Rule 80 of the Superior Court Rules of Civil Procedure notes that responsive pleadings do not even need to be filed in response to an appellant's complaint in an administrative action unless required by statute or the court. This Court never formally requested or ordered such a memorandum. Moreover, while a "memo may provide the [Court] with a better understanding of [the party's] position," the delay has not in any way prevented this Court from doing its job.Id. at 600. Accordingly, Appellant's motion to default the DBR and reinstate his real estate appraiser license is denied.
 B Unlawful Evidentiary Procedure
Appellant argues that the DBR Decision is affected by error of law because the Hearing Officer did not follow the rules of evidence. He claims the Hearing Officer allowed the three expert witnesses to testify on knowledge which they had no basis in *Page 14 
fact of knowing.[8] Additionally, he argues that the Hearing Officer allowed redirect examination of witnesses that exceeded the scope of previous interrogation.
The DBR Decision is not affected by error of law for failure to follow evidentiary procedure. The rules of evidence are relaxed in administrative proceedings. In re Cross,617 A.2d 97, 102 (R.I. 1992); seealso § 42-35-10 (allowing for admittance of evidence "commonly relied upon by reasonably prudent men and women in the conduct of their affairs"). Further, a "court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Rhode Island Rules of Evidence Rule 611(b). The Hearing Officer allowing testimony which exceeded the scope of previous interrogation does not violate § 42-35-10. The testimony was not irrelevant, immaterial, or repetitious.See § 42-35-10. Additionally, Appellant's contention that the witnesses did not appropriately examine the appraised properties and the comparable properties goes to the weight the hearing officer should have afforded to that testimony, findings this Court does not disrupt unless not supported by any legally competent evidence.See Newport Shipyard v. R.I. Commission for HumanRights, 484 A.2d 893, 897 (R.I. 1984) (observing evidence sufficient if reasonable mind might accept it to support a conclusion). The DBR Decision shows that the Hearing Officer based his knowledge of the properties on the extensive property histories located in the record and that the Hearing Officer relied upon witness testimony supported by legally competent evidence. (Decision at 10-13.) *Page 15 
 C Substantial Evidence
Appellant contends that the DBR Decision violates § 42-35-15 because the Decision was clearly erroneous in view of the reliable evidence. Appellant believes the Hearing Officer completely disregarded evidence suggesting that the basis of the expert witnesses' knowledge was unreliable. Specifically, Appellant asserts the expert witnesses did not appropriately characterize Appellant's appraisals and did not adequately review the appraised properties and the comparable properties mentioned in the appraisals.
The DBR found that Appellant violated § 5-20.7-19 and § 5-20.7-20 (2), (5) and (6).[9] Section 5-20.7-19 provides, "[a] state certified or licensed real estate appraiser must comply with the uniform standards of professional appraisal practice promulgated by the appraisal standard board of the Appraisal Foundation." Section 5-20.7-20 provides, in pertinent part,
 "[t]he director of the department of business regulation may, upon his or her own motion or by recommendation of the board, and shall, upon the verified complaint, in writing, of any person setting forth a cause under this section, ascertain the facts and, if warranted, hold a hearing for the suspension or revocation of a certification or license. The director has the power to refuse a certification or license for cause or to suspend or revoke a certification or license where it has been obtained by false representation, or by fraudulent act or conduct, or where the holder of a certificate in performing or attempting to perform any of the acts mentioned in this chapter, is found guilty of:
 * * * *Page 16 
 (2) Failing to meet the minimum qualifications established by this chapter;
 * * *
 (5) An act or omission involving dishonesty, fraud, or misrepresentation with the intent to benefit the certificate holder or another person or with the intent to substantially injure another, mislead or defraud another person;
 (6) Failure or refusal without good cause to exercise reasonable diligence in developing an appraisal, preparing an appraisal report or communicating an appraisal."
While the Appellant has recounted various alleged inconsistencies in the testimony of the experts, his claim "that it is abundantly apparent that the ultimate decision in this matter was predetermined" is without merit. (Brief of Appellant at 28, Nov. 18, 2005 ("Brief of Appellant")). The record shows that the DBR scrutinized nine appraisals of the Appellant and based on those appraisals found that Appellant violated § 5-20.7-20. The record is replete with evidence supporting the agency decision, none more significant than the six occasions of Appellant's appraisal of a property being followed by two same day sales of the same property: one at a value apparently consistent with market conditions and one at the significantly higher appraised value. This consistent pattern, which unrefuted expert testimony established is not common, is circumstantial evidence of dishonest behavior with the intent to benefit either the Appellant or another.[10] As the DBR Decision noted, *Page 17 
 "One could probably find a criticism of virtually every appraisal report based upon differences between appraisers. These small differences, however, are not the reason the Department took action against Respondent. Rather it was the number and character of serious problems over a number of different appraisals which prove a disturbing common trend in Respondents' appraisals. The documents themselves show a disturbing pattern of sale/resale of a property that is not adequately fleshed out in the appraisal process. These facts prove, at best incompetence at worst an improper motive. Respondent did not offer any evidence at the hearing as to why his appraisals were almost double the value of the sale immediately following the appraisal." (Decision at 15.)
This Court cannot take that same evidence, which is supported by the record, and draw a different inference. Barrington Sch. Comm. v.RI Labor Relations Bd., 608 A.2d at 1138.
Moreover, Bergantini's apparent attempt to conceal the correct property owner at the time of his appraisals provides further support for the DBR's finding that Appellant violated § 5-20.7-20. The record confirms that Appellant on several occasions identified the "current owner" not as the owner of the property on the date of the appraisal but rather as the owner who later bought the property at a value well below the appraised price. (Decision at 13-14, Ex. 55-57, Appraisals of 41-43 Woodbine Street, 18-20 Pomona Avenue, 60-62 Steuben Street.) Appellant did not attempt to justify this practice or explain the deception, but merely noted that on one occasion one of the expert *Page 18 
witnesses had failed to identify a current owner in the expert witness's own appraisal of a property. (Brief of Appellant at 24.) Alleged flaws in a witness's appraisal are not relevant as to whether Appellant himself dishonestly distorted the market value in his appraisals to benefit himself or another.
Furthermore, the expert testimony demonstrated that a diligently prepared appraisal will fully and prominently explain differences between prior sales prices on a property and the value the appraiser is placing on the property. (Decision at 16.) The record supports the DBR's finding that Appellant did not do so. The review of Appellant's appraisal of 23 West Street by Godfrey notes both that "[t]here is a pending sales agreement attached to the report which has not been adequately addressed," and that "[t]he appraiser is guilty of failing to fully communicate the pending sales agreement." (Ex. 48)
Appellant responds that he did mention the purchase and sale agreement in the appraisal. This explanation, however, misstates the DBR's problem with the appraisal.[11] The evidence established that a proper appraisal would fully and prominently explain how a property under agreement to sell for $75,000 and which had been on the market for eleven months at $99,925 and $65,000 could be appraised at $140,000. (Ex. 48) The *Page 19 
DBR found that merely referencing — in handwritten notes buried in the appraisal — the previous purchase and sale agreement violated the USPAP and was not in good faith diligently prepared. That finding is supported by reliable and substantial evidence.Id.
Appellant also suggests that his appraisals coincided with market value of the properties four or five years later, in 2001 and 2002. The record shows that the DBR considered this evidence but found it did "not overcome the other evidence in this case." (Decision at 17.) The DBR found that the market value during the time of Appellant's appraisals was depressed and that accordingly the 2001 and 2002 data should not be given great weight.Id. This finding is supported by the record, and this Court cannot substitute its judgment for that of the DBR as to the weight of this evidence. Arnold v. Lebel,941 A.2d 813, 821 (R.I. 2007).
 Conclusion
After a review of the record, this Court finds the Decision of the Department of Business Regulation did not violate substantial rights of the Appellant in violation of § 42-35-10 or § 42-35-15. This Court affirms the DBR's finding that Appellant did not follow the USPAP, did not exercise reasonable diligence in his appraisals, and misrepresented an appraisal with the intent to benefit himself or another. The Decision of the DBR was supported with substantial evidence and was neither arbitrary nor capricious. Accordingly, Appellant's appeal is denied. Counsel shall submit an appropriate order consistent with this Decision.
[1] Appellant did not provide a transcript of the hearings to this Court. Rather, this Court has received twenty-five audio tapes, some blank, some from pre-hearing conferences, some duplicative, and the remainder from the four days of testimony. Neither party has cited to a specific tape or day of testimony to help locate relevant testimony. Accordingly, this Court's accounting of the DBR hearings and pre-hearings is based on the seventy-six exhibits in the record, the DBR decision, and the Brief of Appellant — which does not cite to specific tapes or days of testimony. This Court assumes the factual assertions in the Brief of Appellant are true because they were not disputed in the untimely response brief filed by the DBR and the signature by an attorney certifies the information contained is well grounded in fact pursuant to Rule 11 of the Superior Court Rules of Civil Procedure.
[2] The DBR Decision credits this testimony to Scotti, although Appellant in his brief notes that the testimony actually came from Jones.
[3] The Hearing Officer noted that Jones reviewed a number of Appellant's appraisals and expressed her criticisms, particularly faulting Appellant for using inappropriate comparables in reaching his appraisal value. (Decision at 7.)
[4] The Hearing Officer issued the following findings of fact:
 "1. With regard to 41 Woodbine Street, Respondent appraised the property at $119,00 on November 21, 1997 and listed an individual who did not own the property as current owner. The last sale of the property was on June 17, 1994 in the amount of $30,500 and the differential in value was not explained in the appraisal. On December 18, 1997 the property was sold to the individual listed as `current owner' on the appraisal for $53,500 and was then transferred on the same date to another individual for $119,000.
 2. With regard to 60-62 Steuben Street, Respondent appraised the property at $102,000 on May 22, 1997 and listed an individual who did not own the property as current owner. On December 18, 1997 the property was sold for $54,900 and was then transferred on the same date to another individual for $102,000.
 3. With Regard to 64-66 Ring Street, Respondent appraised the property at $117,000 on December 4, 1997. On March 24, 1997 the property was sold for $60,000 and was then transferred on the same date to another individual for $117,000.
 4. With regard to 233 Federal Street, Respondent appraised the property at $101,000 on December 4, 1997. On December 23, 1997 the property was sold for $55,000 and was then transferred on the same date to another individual for $108,000.
 5. With regard to 18-20 Pamona Avenue, Respondent appraised the property at $102,000 on November 6, 1997 and listed an individual who did not own the property as current owner. On November 26, 1997 the property was sold to the individual listed as "current owner" on the appraisal for $68,000 and was then transferred twenty days later to another individual for $110,000.
 6. With regard to 44-46 Mulberry Street, Respondent appraised the property at $154,000 on May 12, 1997. On May 13, 1997 the property was sold for $83,500 and was then transferred nine days later to another individual for $150,000.
 7. With regard to 54-56 Canton Street, Respondent appraised the property for $103,000 although it had sold for $57,500 eleven days earlier. The appraisal did not contain a sufficient discussion as to why the sale price was so markedly different from the appraised value.
 8. With regard to 948 Cranston Street, Respondent appraised the property for $132,000 although it had a valid purchase and sale dated ten days earlier for $79,500. The appraisal did not contain a sufficient discussion as to why the purchase and sale agreement price was so markedly different from the appraised value.
 9. With regard to 23 West Street, Respondent appraised the property as a four unit dwelling for $154,000 although it was actually a seven unit dwelling and had been listed for $65,000 for 330 days without a sale. With regard to this property, Mr. Godfrey has appraised the property twenty days prior to Respondent and had placed an appraised value of $50,000."
[5] The property located at 18-20 Pamona Avenue, Providence, was not technically sold on the same day, as the Hearing Officer recognized, but rather eighteen days later.
[6] The Hearing Officer observed:
 "the records show that on the date of Respondent's appraisal, 41 Woodbine Street was owned by an individual named Finkle. However, the appraisal lists the "current owner" as Schmidt. Mr. Schmidt did purchase the property on December 18, 1997, three weeks after the appraisal, for $53,500 and resold it the same day to Flamand for $119,000. By listing the improper owner, the fact that Schmidt did not actually own the property on the appraisal date was hidden. With regard to the Federal Street property, no current owner is listed. Two months after the appraisal the property is sold to Schmidt for $55,000 and then transferred to Bouchard on the same day for $108,000. With regard to the Pamona Avenue property the current owner is listed on the appraisal as Fortin Knoll. However, Fortin Knoll did not actually buy the property until twenty days later when it purchased the property for $34,000 less than the appraisal. Three weeks later the property was sold to O'Conner for $110,000. Similar confusion existed with regard to the Steuben Street property. In that appraisal, the borrower is listed as Bento. However the property was actually sold the (sic) Second State Development, which purchased the property on June 26, 1997 from Studney, for $54,900 on June 26, 1997 and then resold to Bento on the same date for $102,000." (Decision at 14.)
[7] This Court notes that § 42-35-12 (f) does mention party briefs, providing "[t]he review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs." This statute cannot be interpreted, however, to suggest that the current situation warrants a default judgment in favor of Appellant.
[8] Appellant does "not quarrel with [the witnesses] ability to testify as or qualify as an expert relative to property appraisals." (Appellant's Brief at 6.) Rather, he claims the experts reviewed his appraisals in a cursory manner and thus did not sufficiently "learn about the value of the properties." Id. at 28.
[9] The DBR Decision referred to violations of the USPAP, addressed in § 5-20.7-19, by referencing § 5-20.7-20 (2).
[10] The United States Supreme Court has observed that "[c]ircumstantial evidence . . . is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a [fact finder] is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the [fact finder] must use its experience with people and events in weighing the probabilities." Holland v.United States, 348 U.S. 121, 137-38 (1954). The United States Supreme Court has expounded on its approval of circumstantial evidence again more recently, this time in a civil case, noting that "[t]he reason for treating circumstantial and direct evidence alike is both clear and deep rooted: circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence." Desert Palace,Inc. v. Costa, 539 U.S. 90, 100 (2003). The value of circumstantial evidence is equally well established in Rhode Island where our Supreme Court has held that culpability may be proven "by a process of logical deduction, by reasoning from an established circumstantial fact through a series of inferences to an ultimate conclusion." State v. Hornoff, 760 A.2d 927 (R.I. 2000) (quoting State v. Diaz, 654 A.2d 1195, 1202 (R.I. 1995)).
[11] Appellant similarly mischaracterizes the DBR's problem with his conversion of a seven unit property to a four unit property. Appellant claims "Godfrey simply did not like where these facts were noted in the appraisal." (Brief of Appellant at 14.) Godfrey, however, testified that anything that would unusually affect market value in the appraisal should be prominently explained so that the appraisal is transparent. (Decision at 15-16.) Godfrey's review of Bergantini's appraisal confirms this, as Godfrey stated, "[t]he report fails to prominently identify the special assumptions made relative to converting the property to a 4-unit residential dwelling. The appraiser fails to address the costs and expenses associated with the conversion to a 4-unit dwelling. The appraiser fails to adequately identify the anticipated configuration or layout that would result from the conversion." (Ex. 48 at 7.)