Eva St. Goddard *vs.* Potter & Johnson Machine Company.

MARCH 17, 1943.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Condon, J. This is an appeal from a decree of the superior court awarding the petitioner compensation under the workmen's compensation act for the death of her husband as a result of an injury sustained by him while working at respondent's machine shop in Pawtucket.

Respondent contends, in support of its appeal, first, that there is no evidence to prove the cause of the injury to petitioner's husband, as she has alleged it in her petition; second, that such injury having resulted from the normal perform-

ance of his regular, routine work, he did not receive it by accident; and, third, that if such injury was received by accident, there is no evidence that it arose out of his employment and caused his death. These contentions are argued at length in respondent's brief in the above order. We shall follow that order in our consideration of them.

We have carefully read the transcript and we are unable to agree with respondent's first contention. A brief resumé of the evidence will be sufficient to show why we disagree. The deceased was a man about sixty years of age at the time of his death. He had worked for the respondent steadily for over thirty-four years. He was rarely absent from his work because of sickness or for any other reason. His health was good until three or four years before his death, when he became afflicted with high blood pressure for which he took medical advice. Two years before his death his right leg developed a painful swelling which interfered somewhat with his normal manner of walking. Nevertheless these ailments did not prevent him from working as steadily as usual, and on the day he was injured, March 31, 1941, he told his wife at noontime, when she brought him his lunch, that he felt very well, or words to that effect.

Early in the afternoon of that day, while tightening a bolt on the milling machine on which he was working, he felt a pain in his right leg and would have fallen to the floor helpless if a fellow workman had not caught him. With the aid of other workmen he was laid on his back and the shop nurse was summoned. When the nurse arrived and saw his condition, she returned to the first aid room and obtained an emergency hypodermic of coramine, which she testified could "be given for several different things, always for shock or to revive someone." After she had given him this hypodermic he was carefully and tenderly removed to the first aid room and put to bed. A doctor who had been summoned by her came to the room and examined him very carefully, noted that he had a fractured leg and ordered it to be placed in splints. Later that afternoon, on the order of Dr. Harris, the

shop surgeon, he was transferred to the Memorial Hospital in Pawtucket where he died the next morning at 7:15 o'clock.

The hospital authorities immediately notified the district medical examiner, Dr. Thad A. Krolicki. He arrived there about 7:30 o'clock and after examining the deceased requested and received permission from the attorney general to perform an autopsy. As a result of the autopsy, which was performed at 9:30 o'clock that morning, Dr. Krolicki reported that the deceased had a fracture of the right femur, that his bones were in the advanced stage of Paget's disease and that he had chronic myocarditis. Doctor Krolicki testified that the primary cause of death was myocarditis with the chief contributing cause the fracture of the femur and the resulting shock, and that deceased did not die from an independent heart attack. He further testified that Paget's disease is a decalcification of the bone which makes it very susceptible to fracture and that a slight trauma or force could cause a fracture of such a diseased bone but that there would have to be some force applied externally or internally to produce a fracture. And he also testified that such a force could have resulted from the deceased's exertion in tightening a bolt such as had been described.

Doctor Harris, who testified for the respondent, did not attend the autopsy but did examine the deceased at the hospital about 9 o'clock the night before he died. The testimony of Dr. Harris conflicts with that of Dr. Krolicki in that he testified that Paget's disease was not an uncommon disease; that there would be no shock immediately upon the fracture of such a diseased bone; and that, in his opinion, if the fracture here was caused by tightening a bolt, the deceased, being admittedly in the advanced stages of Paget's disease, would not have suffered from such fracture a shock resulting in his death. He also differed with Dr. Krolicki in that he testified that, in his opinion, the fracture could have occurred while the deceased was being lifted on to the truck and taken to the first aid room or while his right leg was

being manipulated there by the first doctor who was called by the nurse and who had examined the deceased.

The conflicts in the medical testimony were resolved by the trial justice in favor of the petitioner. He specifically found that the deceased, "while engaged in tightening a bolt on a certain milling or boring machine on March 31, 1941, received a fracture of the right femur, and the resulting shock so aggravated a previously existing heart condition that he died as a result thereof on April 1, 1941." Respondent complains that this finding is not consistent with the cause of the injury as it is alleged in the petition. Petitioner therein alleged: "While tightening a milling machine bolt deceased exerted unusual force and suffered a strain, twist, jolt or bump causing fracture of right femur and resulting shock causing death." The respondent contends that there is no evidence to support such allegation.

It is true that there is no direct evidence that the deceased suffered a jolt, twist or bump or that he exerted any more than the usual force necessary to tighten the bolt but it does not necessarily follow therefrom that there was no evidence of such facts. The trial justice was warranted in inferring from the evidence and especially from the medical testimony that the deceased in finishing the tightening of the bolt had exerted force too great for his diseased right femur to withstand, thus producing a strain which caused it to fracture. The uncontradicted testimony of the medical witnesses that bones weakened by Paget's disease are very susceptible to fracture makes such an inference a reasonable one. We have held that direct evidence of the actual mishap to a workman which caused his injury and resulted in his death is not necessary in order to support a finding that his death was caused by accident. Such a finding, we said, may rest on proper inferences. *Reynolds* v. *Freemasons Hall Co.*, 60 R. I. 343.

Respondent, however, argues that if such inferences are relied on in the case at bar they are based upon undisputed evidence and hence this court should draw its own inferences

from such evidence. That we may do so in a workmen's compensation case, it cites as authority *Correia* v. *McCormick,* 51 R. I. 301. The general rule that this court can, on appeal, draw inferences from the undisputed evidence before it as well as the trial justice and therefore is not bound by the inferences which he has drawn, is well established by our decisions; but in workmen's compensation cases we are powerless to apply it because the workmen's compensation act expressly provides that, in the absence of fraud, the findings of fact by the superior court shall be conclusive. General laws 1938, chapter 300, article III, § 6. In so far as any language in the opinion in the Correia case would seem to indicate a contrary view it is disapproved.

Respondent's second contention that the deceased's injury was not received by accident is based upon too narrow a view of the word "accident" and is clearly not in harmony with our decisions. We need look no further than those decisions to see that this court, very soon after the enactment of our act, took the liberal view of the English courts in favor of the injured workman in this matter. *Walsh* v. *River Spinning Co.,* 41 R. I. 490; *Gibbons* v. *United Electric Rys. Co.,* 48 R. I. 353. And very recently we have had occasion to reexamine those cases and have expressly reaffirmed the liberal view of an accident therein enunciated. *Mederos* v. *McLeod,* 65 R. I. 177; *Barker* v. *Narragansett Racing Ass'n., Inc.,* 65 R. I. 489; *Chirico* v. *Kappler,* 61 R. I. 128.

But respondent argues that in all of the above cases there was some unusual event connected with the employee's work, such as unusual heat, cold, or exertion, that is absent from the case at bar. We think the instant case is a stronger example of an accident than any of those cases. In none of them was there any visible injury excepting only the frostbite in the Gibbons case, whereas here we have the workman sustaining a fractured leg which the trial justice has found was caused by the workman's exertion in tightening a bolt in the course of his work. With that finding of fact established it is impossible to contend successfully that the facts

proved here do not establish an accident within the meaning of our act and decisions. Indeed, the instant case is not unlike the English case of *Clover, Clayton & Co.* v. *Hughes,* 3 B. W. C. C. 275, where a liberal construction of the word "accident" was made in favor of the injured workman, and also another English case of *Fennah* v. *Midland & Great Western Ry. of Ireland,* 4 B. W. C. C. 440. In view of the recognized similarity of our act to the English act and also the reliance which this court, in construing our act, has placed upon the precedents of the English courts in construing their act, we are inclined to give greater consideration to such precedents than to cases cited by respondent that seem to make a less liberal construction of the word "accident".

Respondent's third contention that there is no evidence here that the accident arose out of the workman's employment is, in our opinion, clearly without merit. Under this contention, respondent argues that the evidence shows that the deceased died of myocarditis which Dr. Krolicki testified was the primary cause of death. Respondent further argues that it was incumbent upon the petitioner to prove that the deceased's death was due to shock resulting from the fractured femur because she has set forth in her petition such "a double chain of causation". Respondent argues that she has not made such proof in view of the medical testimony of Dr. Krolicki that the primary cause of her husband's death was chronic myocarditis. On the contrary, respondent argues, the evidence shows that the deceased's "chronic heart condition had finally reached a point where he either fainted or collapsed, and because of his advanced case of Paget's disease the fracture of the femur occurred at some point thereafter." The difficulty with this contention, however, is that it is predicated upon a construction of Dr. Krolicki's testimony that is not justified.

Our view of the doctor's testimony agrees with that of the trial justice. The mere fact that Dr. Krolicki testified that the primary cause of deceased's death was chronic myocarditis does not in any way militate against the correctness

of the trial justice's finding that the deceased "received a fracture of the right femur, and the resulting shock so aggravated a previously existing heart condition that he died as a result thereof on April 1, 1941." Indeed, there is no conflict between them. When the doctor speaks of the primary cause of deceased's death as myocarditis he is referring to the immediate cause of death from the viewpoint of the medical practitioner. When the trial justice in paragraph (8) of the decree is speaking of the fractured femur as "the primary cause of death" he is referring to the proximate cause of deceased's death from the viewpoint of the legal practitioner.

It is clear from the testimony of Dr. Krolicki that he was definitely of the opinion that the deceased did not die of an independent heart attack but that the shock from the fracture of the femur so aggravated the chronic condition of deceased's heart that it "was not capable of withstanding what it should and naturally caused his death." This is equivalent to saying that the "fracture of the right femur, and the resulting shock so aggravated a previously existing heart condition that he died as a result thereof", which was the finding of the trial justice. More examples of the consistency of such finding with the medical testimony might be adduced from the transcript, but so clearly does it appear to us that there is ample evidence of the fact that deceased's death resulted from an injury received by an accident arising out of and in the course of his employment that further illustrations are unnecessary.

Respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*James O. McManus, William I. Matzner,* for petitioner.

*Haslam, Arnold & Sumpter, Harry A. Tuell,* for respondent.