**Supreme Court**

No. 2010-431-M.P.

(08-3328)

Paul Ellis                                     :

v.                                     :

Verizon New England, Inc.                     :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Paul Ellis            :

v.           :

Verizon New England, Inc.    :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The petitioner, Paul Ellis, was severely injured when he was assaulted by a stranger in the West End of the City of Providence. Ellis had been sent to that location by his employer, Verizon New England, Inc. (Verizon). Ellis's claim for workers' compensation benefits was denied following a trial because the trial judge concluded that Ellis had failed to prove that his injuries arose out of and in the course of his employment. The Workers' Compensation Court Appellate Division (Appellate Division) affirmed the trial judge's decision and Ellis sought review by this Court. We granted his petition for writ of certiorari, and we now quash the decree of the Appellate Division.

**I**

**Facts and Procedural History**

The underlying facts of this case are undisputed. On September 17, 2007, Ellis, a splice service technician, was sent by Verizon to a job site on Union Avenue in the West End of Providence to repair outdoor cable lines. Ellis testified that, when he arrived, he heard a man, who was standing across the street, yelling, among other things: "The country is going down. The president is dead." Although he initially ignored the man and went about his repair work, Ellis eventually asked the man what his problem was. In response, the man picked up a piece of

- 1 -

wood and hit Ellis on the head several times with it. Ellis was taken to Rhode Island Hospital, where he received fourteen staples to treat two wounds on his head. Ellis also attended five counseling sessions with a licensed mental-health professional for treatment of emotional stress.

Ellis's assailant, who had fled the scene after the assault, was apprehended on September 19 and was criminally charged. During the time between the assault on Ellis and the arrest of his assailant, Verizon sent its employees to the West End in pairs rather than alone. Additionally, for a couple of weeks following the assailant's arrest, Verizon reassigned employees who objected to working alone in that neighborhood. Ellis returned to work on November 12, 2007 and, for the first two weeks after his return, he rode to job sites with another employee. Ellis's supervisor testified that he was not aware of any other assaults on employees that had taken place in the West End during his thirty-nine-year tenure with the company.

At trial, Ellis offered the testimony of James Lucht, who was the Information Group Director at the Providence Plan, an organization that, among other things, compiles and aggregates statistics on violent crimes in various Providence neighborhoods. Lucht provided a "hot spot" map of Providence that showed the relative concentration in various neighborhoods of violent crimes that were committed between 2002 and 2007. Lucht described the data-collection method used by the Providence Plan in creating this map and testified that "violent crimes" included murder, sexual assault, robbery, and aggravated assault. Although the map depicted the West End as a high-violent-crime area, Lucht acknowledged that there was no way to tell from looking at the map what proportion of the crimes that occurred there were aggravated assaults, as opposed to murders, rapes, and other violent crimes. Lucht also explained that the map depicted aggregated statistics collected over a long period of time and did not indicate variations in crime rates between, for example, night and day or winter and summer. Additionally, Lucht

acknowledged that, because of the way crime rates were displayed on the map, it would be possible for a very-low-crime pocket to appear as a high-crime area because the surrounding neighborhoods have a high concentration of violent crime. Finally, Lucht said that, while much of the Providence Plan's crime data is publicly available on the organization's website, data breaking down the specific types of violent crimes occurring in each neighborhood is not. The trial justice did not permit Lucht to testify about those statistics, reasoning that Verizon could not be held responsible for knowledge that was not publicly available.

The trial judge, although expressing sympathy for Ellis, denied workers' compensation benefits because he concluded that Ellis's injuries were noncompensable under Rhode Island's actual-risk test, which requires that there be some causal connection between the injury suffered by the employee and the employment or the conditions of employment. See Nowicki v. Byrne, 73 R.I. 89, 92, 54 A.2d 7, 9 (1947). The trial judge commended Ellis for demonstrating the high-crime nature of the neighborhood where he was assaulted, but he noted that the statistics did not sufficiently differentiate between aggravated assault and other violent crimes. He also pointed out that there had been no evidence produced that would demonstrate that Verizon was aware of these crime statistics prior to the assault on Ellis; he added that, even if Verizon had been aware, he nonetheless would have concluded that Ellis's injuries were noncompensable under Rhode Island's actual-risk test.

The Appellate Division affirmed, holding that the trial judge did not err in determining that the evidence adduced at trial failed to establish that this random assault was an actual risk of Ellis's employment as a splice technician with Verizon. Additionally, the Appellate Division agreed with the trial judge's assessment that the Providence Plan's crime data were not specific

enough to establish that Ellis was subjected to a special or increased risk of being assaulted at the particular time he was sent to perform service in the West End.

Ellis petitioned this Court for writ of certiorari, which we granted.

## II

### Standard of Review

"Upon a petition for certiorari, we review a decree of the Appellate Division for any error of law or equity pursuant to G.L. 1956 § 28-35-30."[1] Mumma v. Cumberland Farms, Inc., 965 A.2d 437, 441 (R.I. 2009). Thus, we limit our review "to examining the record to determine if an error of law has been committed." Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire, 637 A.2d 1047, 1049 (R.I. 1994). However, we review de novo questions of statutory construction. Mumma, 965 A.2d at 441.

Whether a workers' compensation claimant has demonstrated the requisite causal connection between his injury and his employment is a mixed question of law and fact: "This

---

[1] General Laws 1956 § 28-35-30 limits this Court's review of the Appellate Division's decrees as follows:

> "(a) Upon petition for certiorari, the [S]upreme [C]ourt may affirm, set aside, or modify any decree of the appellate [division] of the workers' compensation court only upon the following grounds:
>
> "(1) That the workers' compensation court acted without or in excess of its authority;
>
> "(2) That the order, decree, or award was procured by fraud; or
>
> "(3) That the appellate division erred on questions of law or equity, the petitioner first having had his objections noted to any adverse rulings made during the progress of the hearing at the time the rulings were made, if made in open hearing and not otherwise of record.
>
> "(b) Review shall not be granted by the [S]upreme [C]ourt except as provided in this section, and the [S]upreme [C]ourt shall disregard any irregularity or error of the appellate division or trial judge unless it affirmatively appears that the petitioner was damaged by the irregularity or error."

- 4 -

[C]ourt is bound by the [Workers' Compensation] [C]ommission's findings regarding the facts surrounding the accident, and we will review those findings only to determine if the record contains competent legal evidence in support thereof." Maggiacomo v. Rhode Island Public Transit Authority, 508 A.2d 402, 403 (R.I. 1986). However, if the facts are undisputed or "would lead to but one conclusion, then the question of whether the injury arose out of the employment is one of law and the [C]ourt is permitted to substitute its judgment for that of the [C]ommission." Branco v. Leviton Manufacturing Co., 518 A.2d 621, 622 (R.I. 1986); DeNardo v. Fairmount Foundries Cranston, Inc., 121 R.I. 440, 449, 339 A.2d 1229, 1234 (1979).

## III

## Discussion

On appeal, Ellis specifies several errors in the Appellate Division's decision. These can be broken down into four general arguments—two of which concern the compensability of Ellis's injury under Rhode Island law; the third pertains to the relevance of Verizon's knowledge about the West End's dangerousness; and the fourth concerns the proper methods for proving the causal connection between injury and employment. First, Ellis argues that the actual-risk standard was satisfied here because "street perils," such as being assaulted by a stranger, are an actual risk of working in the West End. Next, Ellis avers that Verizon's decision to send him to work in a dangerous neighborhood created a "special risk" that Ellis would be assaulted and that assault was, therefore, an actual risk of his employment. Third, Ellis complains that the trial judge (and the Appellate Division) erred in considering whether Verizon was on notice that the West End is a high-crime area in reaching the determination on compensability and in excluding evidence. Finally, Ellis asserts that the Appellate Division erred in affirming the trial court's

conclusion that the crime data he presented at trial did not sufficiently separate the incidence of aggravated assaults from other types of violent crimes.

## A

## Compensability of the Injury

General Laws 1956 § 28-33-1 provides for workers' compensation benefits to be paid to an employee who "receives a personal injury arising out of and in the course of his or her employment, connected and referable to the employment * * *." Under Rhode Island law, the claimant carries the burden of demonstrating that this "nexus or causal connection exists between the injury sustained and the employment." Toolin v. Aquidneck Island Medical Resource, 668 A.2d 639, 640 (R.I. 1995); see also Gaudette v. Glas-Kraft, Inc., 91 R.I. 304, 306, 163 A.2d 23, 24-25 (1960) ("Under § 28-33-1 the [claimant] * * * ha[s] the burden of establishing that he suffered a personal injury arising out of and in the course of his employment, connected therewith and referable thereto."). To determine whether the requisite nexus exists between the injury and the employment, we apply a three-part test first adopted by this Court in Di Libero v. Middlesex Construction Co., 63 R.I. 509, 516, 9 A.2d 848, 851 (1939).

> "We first inquire whether the injury occurred within the period of the employee's employment. Next, we examine the situs of the injury to determine whether it occurred at a place where the employee might reasonably have been expected to be. Third, we inquire whether the employee was reasonably fulfilling the duties of his or her job at the time of the injury or was performing some task incidental to those conditions under which those duties were to be performed." Toolin, 668 A.2d at 641.

Here, it is undisputed that Ellis was injured during the period of his employment at a place where Verizon might reasonably have expected him to be. Therefore, we need only determine whether, at the time he was assaulted, Ellis was "reasonably fulfilling the duties of his * * * job * * * or

- 6 -

was performing some task incidental to those conditions under which those duties were to be performed." Id.

Modern courts generally take one of three approaches to determine whether the risk that caused an injury is one "arising out of and in the course of [an employee's] employment." See 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 3.01 at 3-2, 3-4 (Matthew Bender, rev. ed. 2012). Some jurisdictions apply an "increased-risk" test, under which an injury is compensable if the employment increased the amount of exposure to a general risk that is not unique to that employment but, rather, is one to which the general public is exposed. Id. § 3.03 at 3-5. Other jurisdictions apply an "actual-risk" standard, under which an injury is compensable even if it was caused by a risk that is common to the general public, so long as the risk was an actual risk of that particular employment. Id. § 3.04 at 3-5. Finally, some jurisdictions have embraced the "positional-risk" test, the broadest of the three, which essentially applies a "but-for" analysis: if, but for the requirements or conditions of the employment, the employee would not have been in the position that exposed him or her to risk of injury, that injury is compensable. Id. § 3.05 at 3-6. This Court has consistently taken the position that only those injuries arising from the actual risks of employment are compensable under the Di Libero standard. See Dawson v. A & H MFG. Co., 463 A.2d 519, 521 (R.I. 1983) ("Our holdings * * * clearly indicate that Rhode Island has not adopted a positional-risk test and probably should be placed in the actual-risk category.").

This Court has not yet been called upon to determine under what circumstances the risk of random assault by a stranger is an actual risk of employment.[2] However, courts of other

_____

[2] We have previously addressed workplace assaults, but our cases are not directly on point with the case at bar because they involved assaults that were either personally motivated or clearly work-related. For example, in Gaudette v. Glas-Kraft, Inc., 91 R.I. 304, 305, 163 A.2d 23, 24

- 7 -

jurisdictions and legal scholars have explored this issue extensively. See, e.g., Larson's Workers' Compensation Law § 8.03[2][b] at 8-63 to -66. In particular, Professor Larson has thoroughly reviewed how courts have treated "neutral assaults," which he defines to mean "those assaults which are in essence equivalent to blind or irrational forces, such as attacks by lunatics, drunks, small children, and other irresponsibles; completely unexplained assaults; and assaults by mistake." Id. § 8.03[1] at 8-62. He observes that a minority of jurisdictions treat such assaults as noncompensable "for want of affirmative proof of distinctive employment risk as the cause of the harm," but that a growing number of jurisdictions have begun to treat injuries from random assaults as compensable under a positional-risk standard. Id.

Ellis argues that being randomly assaulted by a stranger was an actual risk of his employment with Verizon. In particular, he attempts to draw an analogy between the facts of his case and this Court's jurisprudence recognizing the "street perils" associated with traveling on public roadways as actual risks of employment. Verizon responds that the Appellate Division correctly applied Rhode Island's actual-risk test to the case at bar and that the "street perils" line of cases should not be expanded to encompass criminal activity.

In limited circumstances, our jurisprudence has recognized certain "street perils" as actual risks of employment, permitting compensation where employees have been injured while

_____

(1960), an employee was injured in a fight with a co-worker while using the company sink. We consider the fight in that case to be distinguishable from the random assault at issue here because, there, the trial court concluded that the basis of the quarrel was private rather than employment-related and, therefore, "the assault was not attributable in whole or in part to the nature, conditions, obligations or incidents of petitioner's employment * * *." Id. at 307, 163 A.2d at 25. In Correia v. McCormick, 51 R.I 301, 302, 303, 154 A. 276, 276 (1931), overruled on other grounds, St. Goddard v. Potter & Johnson Machine Co., 69 R.I. 90, 94, 31 A.2d 20, 22 (1943), this Court awarded compensation when an employee was struck by an angry truck driver who was attempting to deliver gravel to a construction site. There, we concluded that the assault was prompted by the employee's refusal to stray from protocol and, thus, arose out of his job duties. Id. at 303, 154 A. at 276.

using public roadways in connection with their employment. For example, in <u>Sullivan v. State</u>, 89 R.I. 119, 122, 151 A.2d 360, 362 (1959), we held that, when a court employee was struck by an automobile while returning to the courthouse from a refreshment run that had been sanctioned by his supervisor, his injuries were compensable because "[i]n th[o]se circumstances the employment required the [employee] to use the public highway and therefore the risks of such highway must be considered risks of the employment." Similarly, in <u>Branco</u>, 518 A.2d at 623, we held that when an employer required its employees to cross a busy road to get from the employee parking lot to the employer's facility, and an employee was hit by an automobile while crossing the road on the way to his shift, his injury was compensable. There, we reasoned that "because [the] employer placed [the employee] in the position of having to negotiate [a busy road] each work day in order to reach his post, the risk entailed in crossing the highway must be considered a condition incident to his employment." <u>Id.</u> Finally, in <u>Toolin</u>, 668 A.2d at 640, 641, we concluded that, when a nursing assistant who was required by her employer to travel to and from patients' homes was injured in an automobile accident while traveling between patients' homes, "the risk of travel on public roads must be considered a condition incident to [the employee's] employment," notwithstanding the fact that her employer neither paid her for travel time nor reimbursed her for travel expenses.

However, we also have held that injuries caused by other risks unrelated to the common perils of the roadways are noncompensable. For instance, we held that, when an employee who had completed his workday and was departing from his employer's facility (Hillsgrove Airport, which is now named Theodore Francis Green Airport) in his own automobile was hit by a stray bullet that had been fired on a neighboring property, the injury was deemed to be noncompensable because being hit by a stray bullet "was not a natural or necessary

consequence" of the employee's employment at the airport. Nowicki, 73 R.I. at 90-91, 93, 54 A.2d at 8, 9.[3]  Similarly, when an employee was stung by a bee in the hallway of his employer's facility, we held that the injury was noncompensable because the employee failed to demonstrate "that this risk, even though common to the public, was in fact a risk of his employment." Dawson, 463 A.2d at 521-22.  See also Maggiacomo, 508 A.2d at 403, 404 (holding that, under the actual-risk standard, when a bus driver threw out his back as a result of a coughing fit that was otherwise unrelated to his employment, his injuries were noncompensable).

We also are mindful of the tension between two policies underlying Rhode Island's Workers' Compensation Act.  On one hand, "[t]his [C]ourt has consistently repeated that the concept underlying the Workers' Compensation Act is to provide financial and medical benefits to workers who have been injured while on the job by making the employer carry the burden to provide payments." Dawson, 463 A.2d at 522 (Bevilacqua, C.J., and Kelleher, J., dissenting) (citing Guilmette v. Humble Oil & Refining Co., 114 R.I. 508, 512, 336 A.2d 553, 555 (1975); Nardolillo v. Big G Supermarket, Inc., 111 R.I. 751, 755, 306 A.2d 844, 847 (1973)); see also DeNardo, 121 R.I. at 452, 399 A.2d at 1236 (Kelleher, J., concurring) ("This [C]ourt has long recognized that the Act's provisions must be given a liberal construction with an eye to effectuating their evident humanitarian purpose.").  On the other hand, "the Legislature clearly did not intend for the act to compensate every worker who is injured while at his place of employment regardless of the circumstances involved." Maggiacomo, 508 A.2d at 404; see also Zuchowski v. United States Rubber Co., 102 R.I. 165, 172, 175, 229 A.2d 61, 65, 66 (1967) ("To hold [an idiopathic workplace fall compensable] would convert workmen's compensation into a

---

[3] Interestingly, Professor Larson notes "an almost complete parallel between the lunatic-assault cases and stray-bullet cases, as they originate as extensions of the street-risk doctrine * * *." Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 8.03[2][b] at 8-64 (Matthew Bender, rev. ed. 2012).

form of health insurance. This we cannot accept, as it was never the intent of the [L]egislature to afford this type of protection to an injured workman.").

Having carefully considered our own case law, the policies underlying the Workers' Compensation Act, and persuasive authority, we conclude that Ellis's injury here is compensable under the street-peril doctrine. Ellis's employment for Verizon required that he park his work vehicle on public streets and then walk to and from his vehicle, as the tasks required. It was in the course of returning to his work vehicle that he was assaulted on a public street, apparently randomly, by an individual whom the trial judge characterized as "at least slightly off his rocker." This Court has held that the risk of being injured in an automobile accident is among the street perils to which an employee is exposed when his or her employment requires travel on public roads. See Toolin, 668 A.2d at 641; Branco, 518 A.2d at 623; Sullivan, 89 R.I. at 122, 151 A.2d at 362. Thus, we conclude that, under our established case law, had Ellis been struck by a car—rather than by a stick-wielding assailant—as he returned to where his work vehicle was parked on the street, his injuries would have been compensable. See, e.g., Branco, 518 A.2d at 623; Sullivan, 89 R.I. at 122, 151 A.2d at 362. We discern no meaningful difference between being struck by an assailant and being struck by an automobile (both while traveling on a public road) because, in either instance, the possibility of injury is an actual risk to which employees are necessarily exposed if they are required by their employers to travel on public roads.

Moreover, we are satisfied that the street-risk doctrine is not confined to automobile accidents. In a case cited by this Court in Sullivan, 89 R.I. at 122, 151 A.2d at 362, the New York Court of Appeals affirmed an award of compensation to a chauffeur who had been stabbed, stating that "[t]he risk of being stabbed by an insane man running amuck seems in a peculiar sense a risk incidental to the streets to which [the] claimant was exposed by his employment."

Katz v. A. Kadans & Co., 134 N.E. 330, 331 (N.Y. 1922). In a rather stark portrayal of the perils of urban life, the court explained:

> "The street becomes a dangerous place when street brawlers, highwaymen, escaping criminals, or violent madmen are afoot therein as they sometimes are. The danger of being struck by them by accident is a street risk because it is incident to passing through or being on the street when dangerous characters are abroad.
>
> "Particularly on the crowded streets of a great city, not only do vehicles collide, pavements become out of repair, and crowds jostle, but mad or biting dogs may run wild, gunmen may discharge their weapons, police officers may shoot at fugitives fleeing from justice, or other things may happen from which accidental injuries result to people on the streets which are peculiar to the use of the streets and do not commonly happen indoors." Id.

We hasten to add that, notwithstanding such colorful language, the specific risks to which an employee may be exposed on the public roadways by virtue of his or her employment must perforce be the subject of a case-by-case analysis.

We also emphasize that our holding in this case should not be construed as a retreat from the actual-risk test. We reach our conclusion, rather, in recognition of the principle "that the risks of the street are the risks of the employment, if the employment requires the employee's use of the street." Hudson v. Thurston Motor Lines, Inc., 583 S.W.2d 597, 602 (Tenn. 1979). Clearly, Ellis, as a splice service technician for Verizon, was exposed to the risks of the street on a regular basis. We are satisfied that such risks include the risk of a random assault by a stranger, as distinguished from an assault specifically directed against an employee for non-employment-related reasons. In the case under review, however, we hold that being assaulted while on a public road was an actual risk of Ellis's employment and, thus, he "receive[d] a personal injury arising out of and in the course of his * * * employment, connected and referable

to the employment * * *." Section 28-33-1. Therefore, we conclude that Ellis's injury is compensable.

**B**

**Remaining Arguments**

Given our holding that Ellis's injuries are compensable under the street-peril doctrine, we find it unnecessary to determine whether Ellis's injuries might also be compensable under a special or increased-risk theory. Additionally, because Ellis need not prove under the street-peril doctrine that there was a higher-than-average likelihood that he would be assaulted while working in the West End, we need not decide whether Ellis presented sufficient evidence of the neighborhood's dangerousness, nor need we pass on whether the trial judge improperly considered Verizon's knowledge of the neighborhood's dangerousness.

**IV**

**Conclusion**

For the reasons set forth in this opinion we quash the decree of the Appellate Division. The record shall be remanded with our decision endorsed thereon.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        Paul Ellis v. Verizon New England, Inc.

**CASE NO:**        No. 2010-431-M.P.
(08-3328)

**COURT:**        Supreme Court

**DATE OPINION FILED:**   April 12, 2013

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**    Workers' Compensation Court

**JUDGE FROM LOWER COURT**:

Associate Judge Bruce Q. Morin

Associate Judge Debra Olsson

**ATTORNEYS ON APPEAL:**

For Petitioner:  Robert S. Thurston, Esq.

For Respondent:  Thomas M. Bruzzese, Esq.