May 6, 2022

**Supreme Court**

No. 2020-120-M.P.
(17-738)

Doris Phillips                          :

v.                          :

Enterprise Rent-A-Car Company of          :
      Rhode Island, LLC.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Doris Phillips           :

v.                       :

Enterprise Rent-A-Car Company of     :
     Rhode Island, LLC.

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  This case presents an opportunity for this Court to revisit an exception to the going-and-coming rule as it was articulated over thirty-five years ago in *Branco v. Leviton Manufacturing Company, Inc.*, 518 A.2d 621 (R.I. 1986).  Specifically, we are asked to consider whether the *Branco* exception precludes recovery of workers' compensation dependency benefits for an employee's fatal injuries sustained while traveling from an employer's facility to a separate parking lot that is leased, rather than owned, by the employer.

The petitioner, Doris Phillips, seeks review of a decree of the Appellate Division of the Workers' Compensation Court (Appellate Division) denying and dismissing her petition for surviving-spouse compensation benefits and funeral expenses.  The Appellate Division vacated a prior decree of a judge of the Workers' Compensation Court granting the petition and held that the going-and-coming rule

- 1 -

precluded petitioner from recovering dependency benefits for the fatal injuries sustained by her husband, Joseph Phillips, while he was employed by the respondent, Enterprise Rent-A-Car Company of Rhode Island, LLC (Enterprise). This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised on review should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we quash the decree of the Appellate Division.

## I

### Facts and Travel

The underlying facts of this case are largely undisputed. Joseph Phillips was employed as a driver for Enterprise.[1] On December 15, 2016, Joseph died as a result of a motor vehicle accident on Jefferson Boulevard. At the time of his death, Joseph was married and living with his wife, petitioner.

On February 2, 2017, petitioner filed a petition in the Workers' Compensation Court for compensation benefits of a deceased employee. She sought weekly benefits pursuant to G.L. 1956 §§ 28-33-12 and 28-33-23, as well as funeral

---

[1] Because petitioner and the employee, Joseph Phillips, share the same last name, we refer to Joseph at times by his first name for purposes of clarity. No disrespect is intended.

- 2 -

expenses pursuant to § 28-33-16. On February 21, 2017, a Workers' Compensation Court trial judge issued a pretrial order denying the petition. The petitioner then filed a timely claim for trial pursuant to G.L. 1956 § 28-35-20(d), and the trial judge conducted a trial on June 12, 2018.

At trial, six witnesses testified, all of whom were Enterprise employees at the time of the accident. Kristen Piccolo testified as a human resources manager for Enterprise. Frederick Webber testified as an Enterprise dispatcher, a position that functioned as a supervisor for the drivers. Michael Pezzullo, Robert Clarkin, Russell Flanagan, and Richard Dion all testified as Enterprise drivers. Additionally, the parties submitted several exhibits, including a police report detailing the accident, schematics and aerial photos of a parking lot across the street from Enterprise, and three leases between Enterprise and other entities for parking spaces.

All witnesses other than Piccolo worked at the Jefferson Boulevard Enterprise facility, which was located at 99 Jefferson Boulevard in Warwick. Piccolo and Webber testified that onsite parking at the Enterprise facility was generally not available for Enterprise drivers; rather, it was reserved for employees who worked within the facility all day, such as auto technicians, supervisors, and maintenance workers. Pezzullo also testified that drivers were generally not permitted to park onsite at the facility.

All witnesses testified that Enterprise made other parking spaces available for drivers to park their personal vehicles. Trial exhibits 4, 5, and 6 indicate that Enterprise leased parking spaces in three parking lots. Webber corroborated these exhibits by testifying that he believed Enterprise leased the lots and did not own them. One lot sat across from the facility at 110 Jefferson Boulevard; the others were much farther away.

All the driver witnesses testified that they generally parked in the 110 Jefferson Boulevard lot across the street from the facility. Clarkin testified that an Enterprise employee told him to park in that lot. Pezzullo, Flanagan, and Dion each testified specifically that Webber had told them to park in that lot. Webber also testified that, on a driver's first day, he would show the driver the parking lot across the street as the lot where they would be parking.

All witnesses testified that Enterprise also maintained a shuttle service for drivers. Piccolo testified that Enterprise did not have a written policy concerning parking or the shuttle, but rather had "a procedure that's been addressed to all employees[,]" which called for drivers to park at the 110 Jefferson Boulevard lot and take the shuttle to get to 99 Jefferson Boulevard. However, Piccolo also stated that drivers could choose to cross Jefferson Boulevard on foot. According to Piccolo, Enterprise preferred that drivers use the shuttle service, but there was nothing in the employee handbook that prevented drivers from walking, or indeed, that outlined

- 4 -

the parking and shuttle procedures. Piccolo further testified that Webber oversaw the shuttle's operation.

Webber testified that the shuttle was one option for drivers to get from a leased parking lot to the facility; the other options were walking or, if a driver arrived to work late, calling the office for a ride. He stated that, in the morning, the shuttle was usually an Enterprise minivan driven by the first driver to arrive. Webber also testified that the shuttle was available to drivers both at the beginning and end of their shifts. However, Webber testified that the shuttle service operated differently for drivers who returned to the facility after hours.

According to both Piccolo and Webber, Enterprise drivers commonly delivered vehicles from the Jefferson Boulevard facility to other Enterprise locations in the area. Piccolo and Webber both testified that, as drivers delivered a car to another location, they were generally followed by a chase driver, who then drove both himself and the delivering driver back to the base facility after the delivered car was dropped off.

When drivers returned to Jefferson Boulevard after hours, Webber testified, the shuttle service did not operate the way it did in the morning, when a company minivan ferried back and forth from the facility to the parking lot.[2] Instead, the chase

---

[2] At oral argument, counsel for Enterprise clarified that the shuttle was not a specific van with a specific driver, but rather, an "idea" and a "concept."

driver would first bring the drivers back to their personal vehicles in the parking lot across the street from the facility, and then drive the van to the facility. The chase driver could then be picked up at the facility by a driver who drove his own personal vehicle from the parking lot to the facility, and then drove himself and the chase driver back to the parking lot—the "shuttle service" for after-hours referred to this process. However, Pezzullo, who frequently operated as a chase driver, testified that most often the drivers he dropped off at their vehicles would drive directly home. Pezzullo stated that, although some drivers did offer to ferry him back from the facility to the parking lot in their personal vehicles, his being accompanied by another driver to the facility and receiving a ride back from the facility to the parking lot after hours was a "very rare occasion[.]"

Pezzullo and Dion testified as to the events of December 15, 2016. Both testified that they were dispatched to Connecticut together, along with Joseph; Joseph and Dion were assigned to deliver rental vehicles, and Pezzullo followed them as the chase driver. Both also testified that, after delivering their vehicles, they returned to Warwick around 7 p.m., when it was quite dark.

Both witnesses further testified that Pezzullo drove directly to the parking lot across the street from the facility rather than to the facility itself. According to both witnesses, all three men had parked their personal vehicles in the parking lot that day. Both witnesses stated that, once Pezzullo arrived at the parking lot, only Dion

left the chase van and got into his vehicle; Joseph stayed inside the chase van with Pezzullo. Dion indicated that, after he got into his personal vehicle, he drove away from the parking lot. Pezzullo testified that Joseph offered to ride with him in the van to the facility and then walk back to the parking lot with him and that, although Pezzullo told him it was not necessary, Joseph said he would be glad to.

According to Pezzullo, he then drove himself and Joseph across the street to the facility, where he parked the chase van. Pezzullo testified that at that point the facility was closed, so he was not able to clock out; instead, he put everything he had that was related to the assignment, such as the van keys and paperwork, into the company drop box. He also testified that Joseph dropped off his paperwork as well. Pezzullo further testified that, after dropping off their paperwork, he and Joseph walked together until a certain point and then split to cross Jefferson Boulevard to the parking lot. According to the police report provided as an uncontested exhibit at trial, Joseph was struck by at least one vehicle while crossing Jefferson Boulevard, and died as a result. Pezzullo saw the accident occur as Joseph crossed the street.

On June 19, 2018, the trial judge issued a decision in which she found that Phillips' claim was not barred by the going-and-coming rule. Instead, the trial judge found that the *Branco* exception applied notwithstanding that Enterprise leased the employee parking spaces in the parking lot across the street "since in either case the risk of crossing Jefferson Boulevard remained the same." Thereafter, on June 26,

2018, a decree entered which stated that petitioner proved by a fair preponderance of the credible evidence that Joseph's death arose out of and in the course of his employment with Enterprise. The decree also ordered Enterprise to pay petitioner weekly indemnity benefits plus interest, funeral expenses, and counsel fees and costs.

Enterprise then filed a timely claim of appeal to the Appellate Division, challenging the trial judge's finding that Joseph's injury arose out of and in the course of his employment with Enterprise. On April 20, 2020, the Appellate Division issued a decision vacating the trial judge's decision and decree by finding that the going-and-coming rule barred petitioner's claim. Specifically, the Appellate Division held that the facts of the instant case could not satisfy the *Branco* exception because Enterprise leased, rather than owned, the parking lot across the street from the facility. A final decree was entered on April 27, 2020, stating that petitioner failed to establish by a fair preponderance of the credible evidence that Joseph's death arose out of and in the course of his employment with Enterprise, and thus denying and dismissing the petition for compensation.

On May 14, 2020, petitioner filed a timely petition for writ of certiorari with this Court. We granted the petition on May 25, 2021, and the writ of certiorari issued on that same day.

## II

## Standard of Review

"Upon a petition for certiorari, we review a decree of the Appellate Division for any error of law or equity pursuant to G.L. 1956 § 28-35-30." *Ellis v. Verizon New England, Inc.*, 63 A.3d 510, 513 (R.I. 2013) (quoting *Mumma v. Cumberland Farms, Inc.*, 965 A.2d 437, 441 (R.I. 2009)). Section 28-35-30 provides that this Court, upon such a petition, may only "affirm, set aside, or modify any decree of the appellate commission of the workers' compensation court" if that court "acted without or in excess of its authority[,]" if the "decree * * * was procured by fraud[,]" or if "the [A]ppellate [D]ivision erred on questions of law or equity[.]" Section 28-35-30(a). Therefore, we limit our review in this context "to examining the record to determine if an error of law has been committed." *Ellis*, 63 A.3d at 513 (quoting *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1049 (R.I. 1994)).

This Court "conduct[s] a *de novo* review if a question of law or a mixed question of fact and law is in issue." *Ajax Construction Company, Inc. v. Liberty Mutual Insurance Company*, 154 A.3d 913, 921 (R.I. 2017) (quoting *Impulse Packaging, Inc. v. Sicajan*, 869 A.2d 593, 598 (R.I. 2005)). "Whether a workers' compensation claimant has demonstrated the requisite causal connection between his injury and his employment is a mixed question of law and fact[,]" consequently

it is reviewed *de novo*. *Ellis*, 63 A.3d at 513-14. "[I]f the facts are undisputed or 'would lead to but one conclusion, then the question of whether the injury arose out of the employment is one of law and the Court is permitted to substitute its judgment for that of the [Appellate Division]." *Id.* at 514 (brackets omitted) (quoting *Branco*, 518 A.2d at 622). Questions of statutory construction are also reviewed *de novo*. *See id.* at 513.

### III

### Discussion

The petitioner asserts that the Appellate Division committed an error of law by overturning the trial judge's decision which held that the *Branco* exception to the going-and-coming rule applied and thus that Joseph was in the course of his employment pursuant to § 28-33-1 when he was injured. Specifically, petitioner contends that the Appellate Division's basis for finding that the *Branco* exception to the going-and-coming rule did not apply—namely, that Enterprise leased parking spaces and did not own the parking lot—was erroneous. The petitioner argues that, although in some situations an employer's ownership of a parking lot would be relevant, because Joseph's "injuries did not occur in the parking lot, the maintenance of the area had nothing to do with the way in which he was injured[,]" and therefore ownership is not relevant here. Accordingly, petitioner requests that this Court expand the *Branco* test prongs to, *inter alia*, recognize leasing as well as owning a

parking lot as being within the exception. Alternatively, petitioner contends that the Appellate Division's decision erroneously failed to give proper weight to the street peril doctrine, and that Joseph's injuries were compensable under that theory.

By contrast, Enterprise contends that the Appellate Division properly applied the *Branco* exception as written, and thus that the Appellate Division's decision should be upheld. Enterprise asserts that *Branco* should not be expanded because this Court has upheld that case's ownership element in the past despite having occasion to change it, and that the Appellate Division has "strictly" and "consistently" applied the ownership element requirement as well. Further, Enterprise avers that, even if *Branco* were expanded as petitioner has proposed, petitioner would still not be able to recover, because Joseph's injury does not meet the other prongs. Lastly, Enterprise contends that the street peril doctrine is inapplicable to petitioner's case because it is not relevant to going-and-coming cases.

In order to recover workers' compensation benefits, an employee must "receive[] a personal injury arising out of and in the course of his or her employment[.]" Section 28-33-1. However, the going-and-coming rule "operates to deny compensation when injury occurs while the employee is traveling to or from the workplace." *Branco*, 518 A.2d at 622; *see Lima v. William H. Haskell Manufacturing Company*, 100 R.I. 312, 314, 215 A.2d 229, 230 (1965) ("Under that rule it is held that an injury does not arise out of and in the course of employment if

sustained by an employee either while going to or coming from his place of work[.]"). Because, here, Joseph was leaving his place of work at the Enterprise facility when the accident occurred, absent an exception, the going-and-coming rule would operate to bar petitioner's recovery.

However, "[b]ecause of the apparent harshness of this rule," this Court has recognized exceptions to the going-and-coming rule. *Branco*, 518 A.2d at 622. Even if the going-and-coming rule would otherwise apply and preclude recovery, employees are entitled to compensation "if it can be demonstrated that a nexus or causal connection exists between the injury sustained and the employment." *Id.* at 622-23.

In *Di Libero v. Middlesex Const. Co.*, 63 R.I. 509, 9 A.2d 848 (1939), we established three criteria necessary to demonstrate a nexus or causal connection such that the injury would be cognizable despite the going-and-coming rule. *Di Libero*, 63 R.I. at 516, 9 A.2d at 851. First, the injury must have taken place "[w]ithin the period of employment[.]" *Id.* Second, the injury must have "occurred at a place where the employee might reasonably have been expected to be." *Branco*, 518 A.2d at 623. Third, at the time of the injury, the employee must have been "reasonably fulfilling the duties of his [or her] job or * * * performing some task incidental to those duties or to the conditions under which those duties were to be performed." *Id.*

In *Branco*, this Court considered how the *Di Libero* criteria applied to an employee who was injured while walking from a parking lot to his place of work. *Branco*, 518 A.2d at 622, 623. The employee worked at the Leviton Manufacturing Company on Jefferson Boulevard in Warwick; he drove his car to work each morning and parked in a company-owned parking lot also on Jefferson Boulevard, though across the street from the manufacturing facility. *Id.* at 622. Although Leviton owned other parking lots for employee parking, the employee had been specifically directed by his employer to park in the parking lot across the street. *Id.* While walking across Jefferson Boulevard from the parking lot to begin his shift at the facility, he was struck by a car and seriously injured. *Id.*

Based on the facts presented in *Branco*, this Court ruled that the *Di Libero* criteria were squarely met. *Branco*, 518 A.2d at 623. Therefore, the Court established a specifically delineated exception to the going-and-coming rule:

> "[W]e shall extend an exception to the 'going-and-coming rule' in those situations in which (1) the employer owns and maintains an employee parking area separate from its plant-facility grounds, (2) the employer takes affirmative action to control the route of the employee by directing the employee to park in that separate area, and (3) the employee is injured while traveling directly from the lot to the plant facility." *Id.* at 624.

Since its creation, the *Branco* exception has been utilized to allow or bar recovery in workers' compensation cases involving employee injury in parking lots. *See, e.g.*, *Brown v. KNC Management Enterprises, Inc.*, W.C.C. 13-798, slip op. at 8 (App.

- 13 -

Div. Nov. 25, 2019); *Rico v. All Phase Electric Supply Co.*, 675 A.2d 406, 409 (R.I. 1996).

Although the three elements necessary to satisfy the *Branco* exception have not been formally expanded by this Court, we have previously allowed a claimant to recover even when the prongs were not strictly met. *See Rico*, 675 A.2d at 409. In *Rico*, an employee slipped and fell on a walkway between an employee parking lot and the employee entrance to her employer's facility. *Id.* at 407. We held that the situation fell within the *Branco* exception such that the employee could recover, "although the parking lot was not located separate from the employer's premises," a specific requirement of the first *Branco* prong. *Id.* at 409; *see Branco*, 518 A.2d at 624.

Similarly, in the instant case, we believe that Joseph's injury falls under the *Branco* exception despite the test's first prong not being strictly met. Here, it matters little whether Enterprise owned or maintained the parking lot across the street from its facility, because Joseph was not injured by a condition of that parking lot that Enterprise could have changed through ownership or maintenance.

Because Joseph was struck by a car on a public street while walking to the parking lot, the facts at issue in this case are easily distinguishable from those present in the sole case cited by respondent where the Appellate Division strictly upheld

*Branco* as written.[3] *See Brown*, W.C.C. 13-798, slip op. at 8, 14 (holding that an injury in a parking lot adjacent to an employer's facility was not compensable, *inter alia*, because the employer did not own or directly maintain the parking lot). The *Brown* case involved a slip and fall on ice and snow in a parking lot—a risk that depends greatly, if not exclusively, on the actions of the owner or maintainer of the parking lot. *See id.* at 2. Therefore, in such situations, it makes sense to condition workers' compensation recovery on a finding that the employer owned or maintained the parking lot.

However, here, Joseph's injury occurred due to the parking lot's location across the street from Enterprise, a risk that was immutable and unchangeable irrespective of whether Enterprise owned or leased the lot. Regardless of ownership

---

[3] Although Enterprise claims that the Appellate Division has "consistently" applied the *Branco v. Leviton Manufacturing Company, Inc.*, 518 A.2d 621 (R.I. 1986), ownership prong, a review of the cases cited by respondent demonstrates that the Appellate Division has not utilized the *Branco* framework in any cases other than *Brown v. KNC Management Enterprises, Inc.*, WCC 13-798 (App. Div. Nov. 25, 2019). *See Barata v. Hopkins Manor*, W.C.C. 11-5196, slip op. at 9 (App. Div. Mar. 2017) (holding that an employee's slip and fall satisfied the *Di Libero* criteria); *DeSousa v. Shaws Supermarket*, W.C.C. 93-10759 (App. Div. 1995) (holding that an employee could not recover for a slip-and-fall case under the framework in *Knowlton v. Porter Trucking Co., Inc.*, 117 R.I. 28, 362 A.2d 131 (1976)).

We further note that Enterprise's claim that this Court has previously had occasion to reconsider the ownership element of the first *Branco* prong and has chosen to uphold it is incorrect. In *Rico v. All Phase Electric Supply Co.*, 675 A.2d 406 (R.I. 1996)—the only case where we have directly applied the *Branco* exception—that element was not at issue because there was undisputed evidence that the employer owned the parking lot. *See Rico*, 675 A.2d at 407.

of the lot, the danger inherent in crossing Jefferson Boulevard to get from the employment facility to the parking lot remained the same.

Accordingly, we hold that in factual situations such as the instant case, where the location of the parking facility, a condition that is unchangeable regardless of its ownership or maintenance, creates the risk of injury, a petitioner need not show employer ownership or maintenance of the parking lot to recover under the *Branco* exception. Instead, to satisfy the first *Branco* prong, a petitioner need only show that the employer furnished a parking area for employee parking separate from its facility grounds.

Here, petitioner has undoubtedly established that Enterprise furnished a parking area separate from its facility grounds for employee parking. A stipulated exhibit demonstrated that Enterprise leased spaces in the parking lot across the street from its facility, and uncontroverted trial testimony demonstrated that driver employees were directed to use that lot and that the parking available onsite at Enterprise's facility was not available to employees who were drivers. Accordingly, petitioner has satisfied the first element of the *Branco* exception.

Having decided that the first prong of the *Branco* exception is sufficiently met, we note that we agree with the trial judge's decision that the *Branco* exception applies in the instant case, because we conclude that the second and third prongs are also met.

The second *Branco* prong requires that an employer "take[] affirmative action to control the route of the employee[,]" which an employer can do by "directing the employee to park in that separate area[.]" *Branco*, 518 A.2d at 624. Here, each driver testified at trial that he was directed by an Enterprise supervisor to park in the lot across the street and not onsite at the facility itself. Webber also indicated at trial that he showed new driver employees that lot as their parking lot. Therefore, the facts here are analogous to *Branco* itself, where "[a]lthough [the] employer owned another lot for employee parking, [the employee] was specifically directed to park in the lot across the street[,]" and this prong is satisfied. *Id.* at 622.

The third *Branco* prong requires that the employee be "injured while traveling directly from the lot to the plant facility." *Branco*, 518 A.2d at 624. Joseph was injured while traveling directly from completing a task that was a part of his employment—dropping off his driving paperwork in the after-hours employee drop box. Although facially Joseph's injuries do not meet this prong exactly, because he was walking from the facility to the parking lot, there is no significant distinction here between traveling from the facility toward the parking lot or from the parking lot toward the facility, and consequently we hold that this prong is also met.

Accordingly, because we hold that employer ownership and maintenance is not necessary to meet the *Branco* exception test when an employee's injury results from a parking lot's location, which cannot be changed by its owner or maintainer,

and because here Joseph's injury resulted from the parking lot's location and meets both other portions of the *Branco* test, we hold that the *Branco* exception is applicable to the instant case and thus that the going-and-coming rule does not preclude the petitioner's recovery. Therefore, we need not and do not consider the petitioner's alternative argument concerning the street peril doctrine.[4]

## IV

## Conclusion

For the reasons set forth in this opinion, we quash the decree of the Appellate Division and remand to the Appellate Division to reinstate the trial judge's decision. The record may be returned to the Workers' Compensation Court with our decision endorsed therein.

---

[4] As articulated in *Ellis v. New England, Inc.*, 63 A.3d 510 (R.I. 2013), the street peril doctrine holds that "the risks of the street are the risks of the employment, if the employment requires the employee's use of the street." *Ellis*, 63 A.3d at 518 (quoting *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597, 602 (Tenn. 1979)). However, the issue in *Ellis* was whether the claimant could satisfy Rhode Island's actual risk test, and not, as here, whether recovery was barred by the going-and-coming rule. *See id.* at 514-18. Therefore, because we decide the instant case under the existing *Branco* exception to the going-and-coming rule, we decline to consider whether the street peril doctrine creates an exception to the going-and-coming rule.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Doris Phillips v. Enterprise Rent-A-Car Company of Rhode Island, LLC. |
| **Case Number** | No. 2020-120-M.P.<br>(17-738) |
| **Date Opinion Filed** | May 6, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Appellate Division of the Workers' Compensation Court |
| **Judicial Officer from Lower Court** | Associate Judge Debra L. Olsson<br>Associate Judge Alfredo Conte<br>Associate Judge Susan Pepin Fay |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>John M. Harnett, Esq.<br>For Respondent:<br><br>Michael Edwards, Esq. |